Ruby WESTON, Petitioner,

v.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Respondent.

Appeal No. 83–859.

United States Court of Appeals, Federal Circuit.

Dec. 30, 1983.

944

Abraham I. Goldberg, New York City, argued, for petitioner. With him on the brief was John C. Morland, Washington, D.C.

Alexander Younger, Washington, D.C., argued, for respondent.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Sandra P. Spooner and Jane W. Vanneman, Washington, D.C., were on the brief for appellee.

William C. Cregar and Donald U. Grant, U.S. Dept. of Housing and Urban Development, Washington, D.C., of counsel.

Before BENNETT, MILLER and SMITH, Circuit Judges.

BENNETT, Circuit Judge.

This is an appeal of the final order of the Merit Systems Protection Board (MSPB), No. NY 07528210194 (January 7, 1983), sustaining the Department of Housing and Urban Development (HUD) in removing petitioner, Ruby Weston, from her position as an equal opportunity specialist. We *affirm*.

## BACKGROUND

Ms. Weston was first employed with HUD as a realty specialist in its New York Area Office from 1974 to 1977 and was then transferred to its Newark Area Office to serve as an equal opportunity specialist. Subsequently, HUD received information from the State of New York tending to show that her son was the actual buyer of real property on Pilling Street in Brooklyn, New York, sold by HUD when she was serving as a realty specialist exercising certain responsibilities toward the property and, further, that she subsequently received and endorsed a check from an insurance company in settlement of a claim for fire damage to the property. Richard J. Scott of the Office of the Inspector General of HUD commenced a criminal investigation into this possible conflict of interest by interviewing Ms. Weston on January 23, 1979. He informed her of the pending investigation and her rights under the law, including the right to remain silent and to have the advice of an attorney. She declined to sign a statement setting forth the matters discussed.

Thereafter, efforts to continue the interview with or without her attorney were unsuccessful. On October 20, 1980, Ms. Weston confirmed in person her refusal to continue the interview, and the matter was submitted for review by the United States Attorney, who declined prosecution.

On February 25, 1981, Ms. Weston and her attorney, Michelle Patterson, attended a meeting with Mr. Scott and HUD Acting Regional Inspector General, Earl F. O'Hara. They were given a copy of the statement below to follow as it was read aloud by Mr. O'Hara:

> Before we ask you any questions you must understand your rights and your responsibilities as an employee of the Department of HUD.

The purpose of this interview is to obtain your responses to questions concerning possible violations of the HUD Standards of Conduct (24 Code of Federal Regulations Part O, Subpart B, 0.735–202(a)(b)(c)(d)(f); 0.735–204(a)(1)(4)(5)(6)(7)(8)(d); 0.735–205(a)(8)(b)(1); 0.735–210(b)) with respect to the purchase of the HUD-owned property located at 1 Pilling Street, Brooklyn, New York, during 1976 and your outside employment as they relate to your official duties.

You are advised that the United States attorney has declined criminal prosecution of you in the above matter. This is purely an administrative inquiry. You have all the rights and privileges, including the right to remain silent and the right to be represented by legal counsel, guaranteed by the Constitution of the United States, although, since you have a duty as an employee of HUD to answer questions concerning your employment, your failure to answer relevant and material questions, as they relate to your official duties, may cause you to be subjected to disciplinary action, including possible removal by the Department of HUD.

Any information or evidence you furnish in response to questions propounded to you during this interview, or any information or evidence which is gained by reason of your answer, may not be used against you in criminal proceedings; however, it may be used against you administratively.

It is significant that Ms. Weston was thus informed that (1) criminal prosecution against her had been declined by the United States Attorney, (2) no information gained from the interview could be used against her in a criminal proceeding, and (3) her failure to cooperate could subject her as a HUD employee to disciplinary action, specifically including removal from employment.

Ms. Weston refused to sign a form containing the above statement as an acknowledgment that it had been read to her. She requested until March 2, 1981, to consider whether to proceed with the interview. On that date she informed Mr. O'Hara that, based on the advice of her counsel, she would not participate further.

The removal of Ms. Weston for refusing to cooperate in an agency investigation (and other charges related to her abuse of an alleged commission as a notary public, which are not at issue here) was proposed on September 16, 1981, in a letter signed by her supervisor, Earl Fisher. It stated:

> In light of the seriousness of the possible offenses that were involved in the Pilling Street matter and your continued refusal to cooperate with the investigation thereof and in view of your conduct in the representations and usage of your alleged position as a notary public, I find your actions sufficient to warrant, in order to promote the efficiency of the service, your removal from employment by this Department.

> The maintenance of unusually high standards of honesty, integrity, impartiality and conduct by Government employees is considered by the Department to be essential to assure proper performance of Government business and the maintenance of confidence by citizens in their Government. This is especially true in the case of an employee whose position requires public contact as yours does. The avoidance by Government employees of misconduct or conflicts of interest is indispensable to the maintenance of these standards. 24 C.F.R. 0.735–101. To enable the Government to continue this high standard, we require HUD employees to cooperate with HUD's Office of the Inspector General when they conduct an investigation. HUD Handbook—Office of Inspector General, 2000.3A, paragraph 3–2(a).

> . . . .

> The Pilling Street facts and the circumstances involving the use of your notary stamp, as developed to date, raise grave implications as to your honesty, integrity and conduct as a Government employee. I cannot reach any conclusions, based on the Pilling Street facts, due to your re-

fusal to cooperate. However, I can and do conclude that the facts, as presently developed, have presented exceedingly serious circumstances which merited the most complete and thorough investigation possible. You should clearly understand that your refusal to cooperate does not relate to a possible *minor* violation of HUD's Standards of Conduct, but rather relates to the most *serious* violations contained therein. If true, these offenses could have resulted in a criminal prosecution. Such possibility has, of course, been removed by the action of the United States Attorney. (Emphasis in original.)

Ms. Weston was removed effective January 8, 1982, and appealed to the MSPB. The presiding official concluded that her attorney had misconstrued the statement read by Mr. O'Hara at the February 25, 1981, meeting as including a statement of Ms. Weston's *Miranda* rights and had failed to understand the operation of the rule in *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), that the threat of removal from one's position renders any statement compelled thereby inadmissible in a criminal proceeding, so that once having thus in effect received immunity, an employee can legitimately be removed for refusing to answer questions. Accordingly, Ms. Weston was found to have failed to cooperate in a legitimate agency investigation. The presiding official found that a nexus existed between that failure and the efficiency of her agency. The charge of abusing her alleged commission as a New York State notary, however, was determined not to have been proven by a preponderance of the evidence. For this reason, and because it was concluded that Ms. Weston had declined to answer agency questions out of a good faith reliance on the advice (albeit incorrect) of her attorney, the penalty of removal was mitigated to a 15-day suspension.

In the HUD appeal which followed, the MSPB affirmed the decision of the presiding official that Ms. Weston did not have a right to remain silent once she had received immunity by operation of the *Garrity* rule. Characterizing Ms. Weston's case as one that "involves serious allegations of conflict of interest and misuse of office," the MSPB determined that the normal range of penalties prescribed by HUD in a first instance of failing to cooperate with an investigation (a suspension of 5 to 30 days) was inadequate in this case. The board opinion stated:

> [M]ore serious penalties are warranted for more serious first offenses. HUD Handbook 752.2 REV–1, Appendix 3. Honesty, impartiality, and integrity are considered crucial to maintaining public confidence and assuring proper performance of government business, particularly when an employee's position requires public contact as does appellant's. Appellant's alleged misconduct, if proven, raises grave questions concerning her impartiality and integrity. The obstruction of justice that might result from her failure to cooperate under the circumstances is extremely serious.
>
> . . . .
>
> One final factor, the availability of viable alternative sanctions, is particularly significant. If an agency was unable to compel cooperation by a grant of use immunity it might never be able to accumulate sufficient evidence to prove or disprove the underlying charge. Management's ability to investigate conflict of interest allegations would be effectively frustrated. Denial of removal as an appropriate sanction would cripple management's ability to maintain a disciplined and efficient work force, free of improper dealings by its employees.

The MSPB concluded that Ms. Weston's reliance on the erroneous advice of her counsel could not be permitted to mitigate an "otherwise reasonable penalty" and reimposed her removal.

## OPINION

### I

The fifth amendment privilege against compulsory self-incrimination may be asserted in an administrative investigation to protect against any disclosure that

an individual reasonably believes could be used in his own criminal prosecution or could lead to other evidence that might be so used. *Kastigar v. United States,* 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). In addition, the threat of removal from one's position constitutes coercion which renders any statements elicited thereby inadmissible in criminal proceedings against the party so coerced. *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967). Nevertheless, when an employee is once granted immunity through this so-called *Garrity* exclusion rule, he may be removed for failure to cooperate with an agency investigation. *Gardner v. Broderick,* 392 U.S. 273, 278, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation,* 392 U.S. 280, 284–85, 88 S.Ct. 1917, 1919–20, 20 L.Ed.2d 1089 (1968). Invocation of the *Garrity* rule for compelling answers to pertinent questions about the performance of an employee's duties is adequately accomplished when that employee is duly advised of his options to answer under the immunity granted or remain silent and face dismissal. *Kalkines v. United States,* 200 Ct.Cl. 570, 473 F.2d 1391, 1393 (1973).

 Thus, as reasoned in *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation,* 426 F.2d 619, 626 (2d Cir.1970), *cert. denied,* 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972):

> To require a public body to continue to keep an officer or employee who refuses to answer pertinent questions concerning his official conduct, although assured of protection against use of his answers or their fruits in any criminal prosecution, would push the constitutional protection beyond its language, its history or any conceivable purpose of the framers of the Bill of Rights.

The record clearly discloses that at the meeting of February 25, 1981, Ms. Weston and her counsel were in effect advised of the invocation of the *Garrity* rule by the statement distributed and read by Mr. O'Hara. Thus, there is no question that Ms.

Weston's refusal then and subsequently to participate in the proposed investigation was not justifiable out of any valid fifth amendment considerations, and the charge of refusing to cooperate during an official HUD inquiry was correctly sustained by the MSPB.

Petitioner argues nevertheless that her dismissal as a result is improper because (1) it does not promote the efficiency of her employing agency, as required by 5 U.S.C. § 7513(a) (1982), and (2) it represents an abuse of agency discretion in that (a) it exceeds the range of penalties provided for in HUD regulations, and (b) it is imposed for actions undertaken by petitioner not willfully, but in a good faith reliance upon the erroneous advice of her attorney.

These issues will be addressed in turn. In doing so, the decision of the MSPB is to be affirmed unless the action of HUD in terminating Ms. Weston has been shown to have been arbitrary, capricious, an abuse of discretion, not in accordance with law, not obtained in accord with procedures required by law, rule or regulation, or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1982).

II

 Removal, being an adverse agency personnel action among those listed in 5 U.S.C. § 7512 (1982), must according to the requirements of 5 U.S.C. § 7513(a) (1982) be effected "only for such cause as will promote the efficiency of the service." The finding of the board that Ms. Weston's termination would promote the efficiency of her agency is a factual finding which is to be sustained on appeal unless that administrative determination is not supported at least by substantial evidence from the record taken as a whole. *Brewer v. United States Postal Service,* 227 Ct.Cl. 276, 647 F.2d 1093, 1096 (1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982). The record need only disclose such relevant evidence as might be accepted by a reasonable mind as adequate to support the conclusion reached. *Consolidated Edison Co. v. National Labor Relations Board,* 305 U.S.

197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

■ The nexus required by section 7513(a) between the dismissal of Ms. Weston for the charge sustained and the efficiency of her agency resides, not as petitioner would like this court to believe, in an attempt to punish her for unproven allegations of misconduct, but rather in her refusal to cooperate in an agency investigation into activities that formed the basis of those allegations. Those activities had the potential of compromising her agency's reputation for dealing fairly in its pursuit of the public interest and were correctly found by the MSPB to be "extremely serious." The investigation represented an effort of HUD to clear itself and Ms. Weston of the shadow cast by the purported conflict of interest, if it were possible to do so. Her refusal to cooperate, therefore, obstructed HUD in more efficiently carrying out its assigned mission. A large enterprise cannot be managed effectively absent a willingness of its members to support its internal fact-finding endeavors.

There is sufficient connection, in our view, between the removal of employees who are unwilling to support such investigations with candid, forthright responses and the efficient operation of a government enterprise. This is particularly the case when, as with Ms. Weston, the need for an investigation arises from circumstances about which the employee may have unique insights, where the circumstances tend to suggest serious violations of agency standards of conduct, and where the refusal to assist leaves the agency unable to clear its own reputation or evaluate those circumstances with the prospect of designing management procedures to preclude their recurrence. The interests of HUD in removing petitioner are apparent from the record and are supported by the substantial evidence upon which affirmance of the MSPB decision is due in this instance.

Ms. Weston counters with the argument that the testimony of her peers and supervisor in the Office of Fair Housing and Equal Opportunity evidences her competence as an equal opportunity specialist. While Ms. Weston may possess skills which could be of value to HUD, these alone are not the total measure of her impact upon its effectiveness. Positive reports of co-workers are not necessarily inconsistent with her refusal to assist in an investigation into potential prohibited business dealings occurring during her earlier employment in an entirely different locale and department. We affirm the reasonableness of the finding below that Ms. Weston's removal in light of that refusal will promote the efficiency of HUD, notwithstanding her ostensibly credible job performance in an area of agency activity substantially unrelated to that toward which the investigation was directed.

### III

■ In reviewing the appropriateness of an agency-imposed removal, it is not the place of this court to determine what course would have been pursued were we in charge. There exists a great reluctance on the part of the courts to become enmeshed in the disciplinary process and, accordingly, great deference is accorded to the sound discretion of the agency in such matters. *Brewer,* 647 F.2d at 1098; *Swentek v. United States,* 228 Ct.Cl. 468, 658 F.2d 791, 796 (1981). Nevertheless, if the punishment exceeds that permitted by statute or regulations or is so harsh that it amounts to an abuse of discretion, it cannot be permitted to stand. *Boyce v. United States,* 211 Ct.Cl. 57, 543 F.2d 1290, 1292 (1976).

■ Here petitioner has been removed solely for the offense of refusing to cooperate with a legitimate agency investigation into very serious matters concerning possible abuse of office and conflict of interest. While the removal was not made on account of the underlying charges implicit in the subject matter of the investigation, the extreme seriousness of those charges certainly and properly lends gravity to any refusal to supply requested information. This is particularly true where the refusal is sustained and protracted even after the grant of criminal immunity following a 2-year effort to obtain cooperation.

The HUD Offenses and Penalties Guide, Appendix 3 of the HUD Adverse Action Handbook, HUD HB 752.2 Rev-1, states at section 1, paragraph 1, that it is provided "to assist supervisors and managers in selecting appropriate penalties for offenses." Paragraph 3 cautions that the guide "does not cover every possible offense," but instead offers "a generally accepted relationship between the more common types of offenses and the range of penalties *normally* assessed." (Emphasis added.) Specifically, paragraph 5 indicates that the range of penalties provided in the guide "is intended to serve as a *discretionary guide only, and greater or lesser penalties may be imposed* than suggested as circumstances warrant." (Emphasis in original.) It is clear, therefore, that the penalties set forth in the guide are not inflexible outer limits.

Petitioner argues that the refusal to cooperate in connection with an investigation is listed in Appendix 3 of the HUD Adverse Action Handbook, as a Class B Offense, and as such is subject to only a penalty of a suspension of 5 to 30 days for the first such offense. We cannot agree. When returned to the context from which this range of penalties has been excised by petitioner, it is properly understood to be a guide only. Specifically, the range of penalties for a first instance of a Class B Offense is explicitly qualified by the statement that "[r]emoval may be appropriate for the more serious first offense." This makes it quite clear that removal is anything but an excluded penalty. We can think of few less serious first offenses than a refusal to cooperate in an agency investigation of abuse of office when criminal immunity has been granted and, accordingly, hold the imposition of the sanction of removal therefor to be within those contemplated by the HUD guidelines.

██ Section 1, paragraph 8, of the HUD Adverse Action Handbook, Appendix 3, lists a number of factors to be considered in selecting penalties. These are similar, though in less helpful specificity, to the relevant factors recommended by the MSPB in *Douglas v. Veterans Administra-* *tion,* 5 MSPB 313 (1981). As all factors listed will not be pertinent in every case, "review of an agency-imposed penalty is essentially to assure that the agency did conscientiously consider the relevant factors and did strike a responsible balance within tolerable limits of reasonableness." *Id.* at 332–33. No such oversight is apparent in the record in this instance. The final decision of the MSPB identifies as applicable factors supporting the agency action of removal the seriousness of the offense, the public contact required of Ms. Weston in her duties with HUD, and the lack of effectiveness of alternate sanctions. Her 7-year unblemished employment record and purported lack of willfulness in refusing to cooperate are mentioned as countervailing factors. On the basis of our review, the sanction of dismissal in light of the circumstances and a consideration of the above-enumerated factors does not bespeak a result which is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

The facts in *Ashford v. Department of Justice,* 6 MSPB 389 (1981), relied on by the presiding official to mitigate the removal, are distinguishable from those of the present case. While Ashford did refuse to cooperate in an investigation of his agency, the conduct which was the subject of the investigation (improper sexual remarks to another employee) was of a totally different magnitude of seriousness than that which appears to have involved Ms. Weston. Also, the investigation of Ashford's conduct was carried out with a conspicuous heavy-handedness and lack of agency candor not apparent in this instance.

## IV

Finally petitioner stresses that her refusal to cooperate with the HUD investigation into the Pilling Street matter was done on the advice of counsel and should, therefore, serve to mitigate her removal because that refusal cannot be considered intentional. Nevertheless, Ms. Weston freely chose Ms. Patterson as her counsel, and it would be improper to entertain the proposition that

her decision either to choose a specific advisor or to observe the advice received therefrom is one into which a court should intrude.

We agree with the MSPB that to permit a claim of error by counsel to mitigate a penalty which is otherwise reasonable could place one who had retained counsel at an advantage over one who had not, and for entirely improper reasons. Presumably counsel trained in the law offers some benefit to a client over one who has not been so trained. However, this advantage must reside in the skill, not the inadequacies of the counselor. It is a major premise of our legal system that significant controversies will involve opposing positions, one of which is usually proven wrong in resolving the dispute. It would be illogical to mitigate each resulting loss on the assertion that incompetent counsel had been employed to represent what proved to be the incorrect position.

Petitioner here must be held accountable for the conclusions of her designated attorney to the extent that she acceded to those conclusions or permitted counsel to act in her stead. *Link v. Wabash R.R.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962); *Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 666–67 (2d Cir.1980). Chosen counsel will not be monitored by tribunals with the aim of ascertaining when the representation reflects the best interest of each party. *Johnson v. Department of the Treasury,* 721 F.2d 361 at 365 (Fed.Cir.1983).

The decision of the MSPB is accordingly *affirmed.*

AFFIRMED.