Fayez B. HANNA, Petitioner,

v.

**DEPARTMENT OF LABOR,**
Respondent.

No. 00–3240.

United States Court of Appeals, Federal Circuit.

DECIDED: June 5, 2001.

Before LOURIE, RADER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Petitioner Fayez B. Hanna was removed from his position with the Department of Labor for refusing to cooperate with an investigation by the Department's Inspector General. Dr. Hanna's appeal from his removal was assigned to an arbitrator, who sustained the removal action and made detailed findings of fact and conclusions of law in support of his decision. The arbitrator's findings of fact are supported by substantial evidence and his conclusions of law are not erroneous. We therefore *affirm* the arbitrator's decision.

I

Dr. Hanna began employment in 1976 with the Department of Labor, where he served in several different capacities over the years. In 1993, Dr. Hanna sustained an injury and took a ten-month leave of absence from work. He subsequently submitted a claim for workers compensation for the period that he was out of work following his injury. In 1997, the Department of Labor's Office of the Inspector General ("OIG") received information suggesting that Dr. Hanna's claim for workers compensation benefits was fraudulent. When the OIG informed the United States Attorney for the District of Maryland of the investigation, the United States Attorney declined to institute criminal charges

against Dr. Hanna. An OIG agent confirmed that decision in a letter to the United States Attorney dated October 6, 1998.

In light of the United States Attorney's decision, the OIG continued its investigation of the workers compensation claim for what Dr. Hanna's supervisor described in a memorandum to Dr. Hanna as "administrative purposes only." Dr. Hanna's supervisor directed Dr. Hanna to cooperate with the OIG investigation and explained that if he failed to cooperate with the investigation he could be subject to disciplinary action, including possible removal from federal employment. Although the OIG and Dr. Hanna's supervisor directed him to appear for an OIG interview on several occasions, Dr. Hanna did not appear at the designated times, first because of a dispute over whether the proceedings would be recorded, and then because Dr. Hanna's union representative could not be present on the scheduled date.

The parties ultimately rescheduled the interview for March 26, 1999, at which time Dr. Hanna appeared with his union representative and his attorney, William Schladt. At the outset of the interview, OIG agent Tracy Hapeman presented OIG form 117A to Dr. Hanna, told him it was his duty as a federal employee to answer questions, and asked him to acknowledge receipt of the form. The form was quite brief, consisting mainly of the following statement:

> You have a duty to reply to these questions and department disciplinary proceedings resulting in your discharge may be initiated as a result of your answers; however, neither your answers nor any information or evidence which is gained by reason of such statements can be used against you in any criminal proceedings, except that you may be subject to criminal prosecution for any false answers that you may knowingly give to the questions asked you. Your failure to answer questions or knowingly furnishing false and/or misleading information could be a basis for dismissal.

Mr. Schladt took the form from Ms. Hapeman before it reached Dr. Hanna. He testified that he looked at the form but did not read it in its entirety. Mr. Schladt then asked Ms. Hapeman for assurances that Dr. Hanna's testimony could not be used against him in a criminal prosecution. Ms. Hapeman responded by tendering the October 6, 1998, letter reflecting the United States Attorney's decision not to prosecute Dr. Hanna. Mr. Schladt then said that the letter was not sufficient, and Dr. Hanna thereafter refused to answer any questions asked by the OIG agents. The Department of Labor subsequently removed Dr. Hanna for refusing to obey an order to report for an investigative interview in the fall of 1998 and refusing to cooperate with an investigative interview on March 26, 1999. Dr. Hanna appealed the removal action and the case was assigned to an arbitrator.

The arbitrator found that the charge of refusing to obey an order to report for an investigative interview was not sustained, but that the charge of refusing to cooperate with an investigative interview was sustained. On the basis of the latter charge, the arbitrator upheld the removal action. In response to Dr. Hanna's argument that Ms. Hapeman failed to give him adequate assurances that his statements at the interview would not be used against him in a criminal prosecution, the arbitrator found that Ms. Hapeman's usual practice of giving such assurances "by reading the form to an interviewee was interrupted by [Dr. Hanna's] own counsel. More importantly, the written form 117A itself, in plain, uncomplicated language amply and fully conveyed to [Dr. Hanna] and his

counsel the immunity from prosecution to which he was entitled." In response to Dr. Hanna's argument that the OIG's message regarding immunity was unclear, the arbitrator found that "[t]he message that [Dr. Hanna] had use immunity, given by Ms. Hapeman and the OIG office was crystal clear.... If there was any 'garbled message' or confusion, it was created by [Dr. Hanna's] own counsel, Mr. William Schladt."

With respect to the penalty of removal, the arbitrator noted that the deciding official had stated that the refusal to cooperate was an adequate basis by itself for Dr. Hanna's removal. The arbitrator further concluded that Dr. Hanna's failure to cooperate with the OIG investigation "is a grave and serious matter as it could frustrate the OIG's responsibility to preserve the integrity of federal benefit programs" and that in light of the seriousness of the misconduct as well as Dr. Hanna's prior record of three previous disciplinary actions, the sanction of removal was within the permissible scope of the agency's discretion.

## II

Dr. Hanna's principal argument on appeal is that he was not adequately assured that his statements at the March 26, 1999, interview would not be used against him in a criminal prosecution. That argument fails in light of the express findings of the arbitrator as to events that occurred at the outset of the interview. The arbitrator concluded that OIG form 117A, which was given to Dr. Hanna and his attorney at the meeting, contained a clear and unambiguous statement that nothing Dr. Hanna said at the interview could be used against him in a criminal proceeding. The arbitrator further concluded that Ms. Hapeman's usual practice of reading the form to the interviewee was

interrupted by Dr. Hanna's lawyer, Mr. Schladt. Both of those findings are supported by substantial evidence. Ms. Hapeman testified that her normal procedure was to present the form to the interviewee and read it to the interviewee, but that Mr. Schladt had taken the form from her and had said that it was not necessary for her to read the form to Dr. Hanna. Moreover, Mr. Schladt admitted that he looked at the form but said that he did not study it. The form, which contains only 11 lines of text, is a model of clarity in setting forth that the interviewee was required to respond to the questioning, that the interviewee's responses could not be used against him in a criminal prosecution, and that a refusal to respond could result in disciplinary action, including removal. Under those circumstances, the arbitrator was justified in finding that if there was any confusion regarding the immunity granted to Dr. Hanna, it was caused by Mr. Schladt, not by the OIG agents. The arbitrator further concluded that Dr. Hanna was "fully responsible for failing to cooperate in the OIG investigation on March 26, 1999, despite the erroneous advice of counsel regarding the full protection of his privilege against self-incrimination," and we agree. See Weston v. Dep't of Housing and Urban Dev., 724 F.2d 943, 951 (Fed.Cir.1983) (an employee "must be held accountable for the conclusions of [his] designated attorney to the extent that [he] acceded to those conclusions or permitted counsel to act in [his] stead").

Dr. Hanna focuses on the fact that in response to Mr. Schladt's request for assurance that Dr. Hanna would have immunity from prosecution, the OIG agents produced the letter written to the United States Attorney for the District of Maryland confirming the United States Attorney's decision not to prosecute Dr. Hanna. He argues that the letter was confusing

because it did not provide an adequate guarantee of the constitutionally required immunity. Moreover, Dr. Hanna and his union representative testified that when Mr. Schladt objected that the letter was insufficient, one of the OIG agents responded, "That letter is all you are going to get."

While it is true that the letter did not ensure that Dr. Hanna could never be prosecuted in connection with the workers compensation claim, no such guarantee was required. Instead, all that was required was that he be given immunity from the use of his statements at the interview in any such prosecution. *See Kastigar v. United States*, 406 U.S. 441, 449–53, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). OIG form 117A made clear that Dr. Hanna had that form of immunity. To the extent that Mr. Schladt overlooked the language of the form and focused on the letter to the United States Attorney, he was mistaken. As a consequence of the directive compelling Dr. Hanna to respond to questions at the interview under threat of removal, Dr. Hanna was automatically entitled to use immunity for any statements made at the interview, *see Garrity v. New Jersey*, 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), an entitlement that was confirmed in plain terms by OIG form 117A, *see Kalkines v. United States*, 200 Ct.Cl. 570, 473 F.2d 1391 (1973).

While the OIG agents could have done more to ensure that there was no doubt that Dr. Hanna was entitled to use immunity, there was substantial evidence to support the arbitrator's conclusion that any confusion about Dr. Hanna's legal situation was ultimately attributable to Mr. Schladt, not to the OIG agents. The form given to Dr. Hanna and Mr. Schladt was straightforward and clear; the fact that Mr. Schladt declined Ms. Hapeman's offer to read the form and did not himself read it thoroughly or allow his client to read it is no basis for finding that the advice that the government agents gave Dr. Hanna was inadequate. Moreover, the references to the October 6, 1998, letter should not have confused Mr. Schladt, because that letter addressed the question whether there would be a criminal prosecution, not the separate question whether Dr. Hanna's statements could be used in any such prosecution. We therefore agree with the government that substantial evidence supports the arbitrator's finding that Dr. Hanna was adequately advised that the statements he made at the interview could not be used against him in any criminal prosecution. Dr. Hanna's refusal to respond to questioning, despite that advisement, was thus a valid ground for disciplining him.

■ Dr. Hanna next contends that the connection between the workers compensation claim and Dr. Hanna's job responsibilities was too attenuated to justify his removal and that the arbitrator used too broad a standard in finding a sufficient connection between the two. We disagree. Filing a false claim for workers compensation benefits based on an injury sustained in the course of federal employment has a sufficient nexus to the employee's work to serve as a basis for disciplinary action, and there is therefore a similarly sufficient nexus between the employee's work responsibilities and the agency's investigation into allegedly false worker compensation claims. There is no requirement that the proposed questioning be directed solely at the employee's assigned activities, as opposed to fraudulent conduct in seeking benefits that are made available because of the individual's status as an employee. In this case, the arbitrator correctly held that the nexus between the workers compensation claim and Dr. Hanna's job responsibilities was sufficient to satisfy the require-

ment that there be "a connection between the employee's misconduct and the employee's job responsibilities." *Brook v. Corrado,* 999 F.2d 523, 527 (Fed.Cir.1993).

 Finally, Dr. Hanna argues that the penalty of removal was unconscionably disproportionate to his offense and must be set aside. Our review on the issue of the choice of penalty is extremely narrow and the agency's exercise of discretion in this area is respected except in the most exceptional cases. *See Schapansky v. Dep't of Transp., FAA,* 735 F.2d 477, 484 (Fed.Cir. 1984). We have previously upheld the sanction of removal for refusal to cooperate in an agency investigation, *see Weston,* 724 F.2d at 949–50, and we see no reason to depart from that precedent. In light of the *Weston* case, we also decline to treat Dr. Hanna's reliance on the advice of his attorney, Mr. Schladt, as a mitigating factor. As noted above, the court explained in *Weston* that an employee is responsible for actions taken on the advice of his designated counsel or by his counsel on his behalf. 724 F.2d at 955. Dr. Hanna's decision not to cooperate with the OIG investigation is therefore fully attributable to him, even though the decision may have been made on the advice of his counsel. Accordingly, we affirm the decision of the arbitrator upholding the Department of Labor's decision to remove Dr. Hanna from his position with the agency.