UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| FELICIA L. JACKSON-FISHER,<br>Appellant, | DOCKET NUMBER<br>CH-0752-15-0492-I-1 |
| v. | |
| UNITED STATES POSTAL SERVICE,<br>Agency. | DATE: September 13, 2022 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Glenn L. Smith, Esquire, Grand Rapids, Michigan, for the appellant.

Deborah W. Carlson, Chicago, Illinois, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1 The appellant has filed a petition for review of the initial decision, which sustained her demotion. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to clarify the basis for weighing the testimony and hearsay evidence, we AFFIRM the initial decision.

## BACKGROUND

¶2        The agency proposed the appellant's removal based upon one charge of improper conduct. Initial Appeal File (IAF), Tab 5, Part 1 at 30-34. The charge included four specifications, best summarized as follows:  (1) behaving in a threatening manner towards L.D. (Senior Sales Executive, Shipping); (2) coercing a subordinate employee into taking an online biology class; (3) engaging in unethical conduct when asking a subordinate to assist in getting the appellant's husband a job with the coworker's husband's company; and (4) selling Mary Kay products to subordinate employees in the workplace. *Id.* at 30-33. The deciding official sustained the charge, but he mitigated the penalty to a demotion from a Manager of Sales, EAS-25, to a Field Account Representative, EAS-18. *Id.* at 23-27.

¶3        The appellant filed the instant appeal challenging her demotion and requesting a hearing. IAF, Tab 1. After holding the hearing, the administrative

judge issued an initial decision that affirmed the agency's action.[2] IAF, Tab 56, Initial Decision (ID). In sustaining the charge, the administrative judge sustained only specifications 1 and 4. ID at 2-4. The appellant has filed a petition for review, the agency has responded, and the appellant has replied. Petition for Review (PFR) File, Tabs 5, 7-8.

## DISCUSSION OF ARGUMENTS ON REVIEW

We affirm the administrative judge's initial decision to sustain specification 1, but we modify the decision to clarify the basis for weighing testimony and hearsay evidence.

¶4     The appellant argues that the administrative judge should not have sustained specification 1 because the agency has not proven that she behaved in a threatening manner under the test for establishing a threat set forth by the U.S. Court of Appeals for the Federal Circuit in *Metz v. Department of the Treasury*, 780 F.2d 1001, 1002-03 (Fed. Cir. 1986). PFR File, Tab 5 at 10-12; ID at 2 n.2. To the contrary, we find that, because the specification contains a detailed narrative description of the misconduct that gave rise to the charge, the agency was entitled to charge the appellant with the broad label of "improper conduct" rather than a more specific label. *Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202-03 (1997).

¶5     Here, specification 1 charged the appellant with behaving in a threatening manner towards L.D. IAF, Tab 5, Part 1 at 30. The proposal notice includes a narrative that further describes the appellant's actions. *Id.* at 30-31. In short, the proposing official stated that L.D. informed her that the appellant argued with

---

[2] The appellant has not challenged, and we see no reason to disturb, the administrative judge's finding that there was no due process violation or harmful procedural error regarding the agency's decision to communicate only with her representative or concerning the deciding official's *Douglas* factors analysis. ID at 14-19; *see Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987). The appellant also does not challenge the administrative judge's finding of nexus, and we see no reason to disturb this finding. *Broughton*, 33 M.S.P.R. at 359; ID at 19-20; PFR File, Tab 5.

her, and demeaned and humiliated her by "[getting] in her face" and yelling at her in a customer meeting. *Id.* at 30. The proposing official also stated that one customer at the meeting told her that the appellant told L.D. to "shut up" and jumped out of her seat, raising her hand at L.D. *Id.* Further, the proposing official recounted that the appellant called her the day of the incident, stated that she needed a "coaching moment," and reported that she got up from her seat, went over to L.D., put her hand up, and loudly told L.D. to stop talking. *Id.* at 31. The proposing official concluded that the appellant's actions violated the agency's "Zero Tolerance" policy regarding threatening and/or intimidating behavior, tarnished the image of the agency, and were contrary to the appellant's responsibility for setting the parameters for appropriate behavior in the unit. *Id.*

¶6        The administrative judge found that the agency was not required to prove that the appellant intentionally threatened L.D. under the *Metz* test, and instead she sustained the specification because the agency proved the facts outlined in its proposal. ID at 2-5 (citing *Brough v. Department of Commerce*, 119 M.S.P.R. 118, ¶ 12 n.2 (2013)). We find no error in this respect. *See Otero*, 73 M.S.P.R. at 202-03.

¶7        Furthermore, even if we did apply the *Metz* analysis, we still would sustain this specification. In *Metz*, 780 F.2d at 1002-03, the Federal Circuit enumerated the following factors for deciding whether an employee threatened her coworkers: the listener's reactions; the listener's apprehension of harm; the speaker's intent; any conditional nature of the statements; and attendant circumstances. First, the record reflects that L.D. felt threatened and that she experienced apprehension of harm. The administrative judge gave greater weight to L.D.'s statements that she perceived the appellant's behavior as threatening because the appellant approached L.D., raised her hand, and made L.D. feel that the situation would get physical. ID at 5; IAF, Tab 5, Part 2 at 32-33, Part 5 at 5-6. Second, the two customers' reactions, as recorded in their statements and reported to the business alliance manager and the appellant's direct supervisor,

also support the administrative judge's finding that the appellant's conduct was threatening.  ID at 5-6; IAF, Tab 53, Hearing Compact Disc (Sept. 29, 2015) (HCD 1) (testimony of the business alliance manager and the appellant's direct supervisor); IAF, Tab 5, Part 2 at 38-41.  Specifically, the fact that the customers reported the appellant's conduct as aggressive and were concerned about how L.D. was doing after the incident supports a finding that L.D. acted in a scared or upset way and appeared to fear harm and that the appellant's statements did not appear to be conditional.  IAF, Tab 5, Part 2 at 38-41.

¶8      Next, the record demonstrates the threatening nature of the appellant's comments and actions regarding L.D.  Particularly when the statement at issue is made intentionally and maliciously and conveys a threatening action, the Board will find that the intent element is proven.  *Rose v. U.S. Postal Service*, 109 M.S.P.R. 31, ¶ 24 (2007).  The evidence supports such a finding here because the administrative judge found, and we agree, that the appellant jumped out of her seat, acted aggressively toward L.D., yelled at her, and told her to "shut up" and to stop talking.  ID at 2-5.

¶9      Moreover, the evidence does not show that the appellant intended her statements and actions to be conditional or that attendant circumstances weigh against a finding that she threatened L.D.  Accordingly, we find that, even if the agency was required to prove a threat charge under the *Metz* criteria, we still would sustain the specification.  *See Rose*, 109 M.S.P.R. 31, ¶¶ 11-29.

¶10     The appellant next asserts that the administrative judge erred in finding not credible her testimony regarding this specification and incorrectly gave greater weight to hearsay in the form of written statements by two customers who witnessed the interaction, L.D.'s out-of-court statement, and third parties' testimony regarding L.D.'s description of the incident.  PFR File, Tab 5 at 7-17. For the reasons discussed below, we modify the initial decision to properly weigh the testimony and hearsay evidence in the context of the factors set forth in *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981).

¶11     In general, to resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible. *Hillen v. Department of the Army*, [35 M.S.P.R. 453](#), 458 (1987).[3]  However, in weighing hearsay evidence, the administrative judge must consider the following factors:  (1) the availability of persons with firsthand knowledge to testify at the hearing; (2) whether the statements of the out-of-court declarants were signed or in affidavit form, and whether anyone witnessed the signing; (3) the agency's explanation for failing to obtain signed or sworn statements; (4) whether declarants were disinterested witnesses to the events, and whether the statements were routinely made; (5) consistency of declarants' accounts with other information in the case, internal consistency, and their consistency with each other; (6) whether corroboration for statements can otherwise be found in the agency record; (7) the absence of contradictory evidence; and (8) the credibility of the declarant when he made the statement attributed to him. *Borninkhof*, 5 M.S.P.R. at 87.  Generally, the Board favors live testimony over hearsay. *Bledsoe v. Department of Justice*, [91 M.S.P.R. 93](#), ¶ 7 n.4 (2002).   However, the Federal Circuit has stated that "hearsay may be accepted as preponderant evidence even without corroboration if, to a reasonable mind, the circumstances are such as to lend it credence." *Kewley v. Department of Health & Human Services*, [153 F.3d 1357](#), 1364 (Fed. Cir. 1998) (citing *Hayes v. Department of the Navy*, [727 F.2d 1535](#), 1538 (Fed. Cir. 1984)).  To determine whether hearsay evidence alone is sufficient to sustain the specification depends

---

[3] In weighing witness credibility, the administrative judge considers the following factors:  (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen*, 35 M.S.P.R. at 458.

on its reliability and trustworthiness. *Social Security Administration v. Long*, 113 M.S.P.R. 190, ¶ 7 (2010), *aff'd*, 635 F.3d 526 (Fed. Cir. 2011).

¶12    Here, the administrative judge found that the appellant's testimony was not credible because it was in her self-interest to characterize her interaction as not aggressive or threatening, her testimony was contradicted by the statements of the two customers who had witnessed the interaction, and he found that the witnesses who testified about L.D.'s conflicting statements were credible. ID at 5-6; IAF, Tab 54, Hearing Compact Disc (Sept. 30, 2015) (testimony of the appellant); IAF, Tab 5, Part 1 at 41-43, Part 2 at 42-46. Conversely, the administrative judge found that L.D.'s characterization that she perceived the appellant as aggressive and threatening, as recounted by the testimony of others at the hearing, was more credible than that of the appellant. ID at 6. Specifically, she found that the testimonies of the appellant's direct supervisor, the human resources liaison, and the business alliance manager supported L.D.'s version of events and were credible because they testified in a straightforward manner and they did not have any reason to be less than truthful or biased against the appellant. ID at 4-6.

¶13    The administrative judge also found that the information from the two customers who witnessed the incident was even more important in supporting L.D.'s version of events. ID at 5. Specifically, the administrative judge considered the appellant's direct supervisor's testimony that she called one of the customers the day after the meeting, couching the call as a customer feedback request, and the customer reported that the appellant approached L.D., raised her hand, and told her to shut up. *Id.* The administrative judge also considered the business alliance manager's testimony that on the day after the incident, the first customer asked how L.D. was doing, that the second customer said that the appellant had threatened "fisticuffs" and wished he had recorded the interaction on his iPhone, and that, when discussing the incident with agency investigators, both customers described the appellant's conduct as aggressive. *Id.*; HCD 1 (testimony of the business alliance manager); IAF, Tab 5, Part 2 at 28-29, 58-59.

¶14    Considering these findings in the context of the *Borninkhof* factors, we agree with the administrative judge that L.D.'s version of events has significant probative value.  Specifically, the agency's statement that L.D. was unable to testify at the hearing weighs in favor of crediting her written statement, the memorandum of interview, and the testimony of others about her statements to them.  PFR File, Tab 7 at 8.  Additionally, the fact that L.D.'s written statement is a sworn affidavit and that the memorandum of interview was obtained during the Office of Inspector General (OIG) investigation into the matters at issue in this appeal supports a finding of reliability of the hearsay evidence.  IAF, Tab 5, Part 2 at 32-33, Part 5 at 4-6; *see Gardner v. U.S. Postal Service*, 44 M.S.P.R. 565, 569 (1990) (finding that the administrative judge properly considered signed grievance appeal forms in considering evidence of a threat), *aff'd*, 983 F.2d 1087 (Fed. Cir. 1992) (Table).

¶15    Although the two customers declined to give written sworn statements, their interviews were conducted in the context of the formal OIG investigation.  IAF, Tab 5, Part 2 at 38-41.  Additionally, as the administrative judge found, these individuals were disinterested parties.  ID at 5.  Thus, we find that their interview statements further support favoring L.D.'s account of the interaction with the appellant.

¶16    In giving great weight to the statements of the two customers, the administrative judge also considered the fact that one of the customers asked how L.D. was doing and the other wished that he had recorded the interaction with his iPhone.  ID at 5.  We agree that the customers' negative reactions to the appellant's actions further support the weight given to the hearsay evidence of L.D.'s version of events.[4]  *Id.*; HCD 1 (testimony of the business alliance manager and the appellant's direct supervisor); IAF, Tab 5, Part 2 at 38-41.

---

[4] The appellant's direct supervisor's and the business alliance manager's respective testimony indicates their impressions of the customers' negative reactions to the appellant's actions, as opposed to the truth of their statements.  HCD 1 (testimony of

¶17     We have considered the possibility that L.D. may have been biased against the appellant because she was her subordinate and had filed an equal employment opportunity complaint against her.  IAF, Tab 5, Part 5 at 4-59.  We also have considered the appellant's arguments on review that the customers were biased against her because they were under investigation for allegedly defrauding the agency and that they believed L.D. "was on their side" during the meeting.  PFR File, Tab 5 at 6-7.  However, based upon our discussion above, our review of the remaining *Borninkhof* factors, and our review of the record as a whole, we agree with the administrative judge's determination that L.D.'s account of the meeting is more credible than that of the appellant.  Accordingly, we find that the administrative judge properly weighed the evidence in support of sustaining this specification.  *See Seeley v. Department of Transportation*, 17 M.S.P.R. 139, 142-43 (1983) (finding that hearsay evidence comprised sufficient evidence to sustain the agency's adverse action based on the record taken as a whole), *aff'd*, 795 F.2d 1010 (Fed. Cir. 1986) (Table).

The appellant has not shown error in the administrative judge's decision to sustain specification 4.

¶18     On review, the appellant challenges the administrative judge's decision to sustain specification 4, which charged her with selling Mary Kay products to subordinates in the workplace.  PFR File, Tab 5 at 17-24.  The administrative judge found that the appellant admitted she was a Mary Kay consultant but denied making sales at work.  ID at 12.  Instead, the appellant asserted that she was on her cousin's sales team, her coworkers (including subordinates) asked that she obtain specific products for them, and she collected payments that she forwarded to her cousin.  *Id.*

---

the business alliance manager and the appellant's direct supervisor).  Thus, the testimony is not hearsay, and it was proper for the administrative judge to give it great weight.  *Taylor v. U.S. Postal Service*, 75 M.S.P.R. 322, 325 (1997) (citing Fed. R. Evid. 801(c)).

¶19     The appellant asserts that the administrative judge improperly sustained this specification under 5 C.F.R. § 7001.102(a)(2), which prohibits sales activity, because she was not actually selling the Mary Kay products.  She also challenges the application of 5 C.F.R. § 2635.702, which prohibits the use of her public office for private gain.  PFR File, Tab 5 at 20-24; ID at 12-13.  First, we agree with the administrative judge that 5 C.F.R. § 7001.102(a)(2) forbids sales both for oneself and for any other person and thus, regardless of whether the appellant was selling the products on behalf of her cousin, she still violated the regulation.  ID at 13.  Second, pursuant to 5 C.F.R. § 2635.702, an employee may not "use his public office for his own private gain, for the endorsement of any product, service or enterprise, or for the private gain of . . . relatives," among others.  We agree with the administrative judge that this regulation prohibits the appellant's activities on behalf of her cousin and that, as part of her cousin's sales team, she improperly derived personal gain from the sales of the Mary Kay products.  ID at 13-14.

¶20     The appellant challenges the application of the agency's ethics regulations because she asserts that she was unaware of her ethical obligations.  PFR File, Tab 5 at 23-24.  However, she violated the regulations when she sold the products, regardless of whether she knew of her ethical responsibilities or intended to violate them.  *See Perdue v. V.A. Medical Center*, 20 M.S.P.R. 86, 88 (1984).  Further, we agree with the administrative judge's finding that the appellant actually knew the regulations and that it defies common sense and prudence to engage in the charged business conduct with her subordinates.  ID at 13; HCD 1 (testimony of the deciding official); IAF, Tab 5, Part 4 at 6-11.  Accordingly, we find that the appellant breached her ethical obligations when she sold the Mary Kay products to her subordinates and thus, we agree with the administrative judge's decision to sustain this specification.  *See Vargas v. U.S. Postal Service*, 83 M.S.P.R. 695, 697-99 (1999).

¶21	The appellant's remaining arguments constitute mere disagreement with the administrative judge's factual findings, which are supported by the record evidence, and thus do not provide a basis for disturbing the initial decision. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997). Accordingly, we agree with the administrative judge that specification 4 is sustained.

We affirm the administrative judge's decision to defer to the agency's penalty determination.

¶22	The appellant asserts that the imposed penalty exceeds the tolerable bounds of reasonableness, whether or not the Board sustains specification 1, specification 4, or both, and that the penalty should be mitigated to, at most, a demotion to an EAS-23 position. PFR File, Tab 5 at 24-29. For the reasons discussed below, we disagree.

¶23	We agree that the appellant's over 20 years of service free of previous discipline constitutes a significant mitigating factor. *See Raco v. Social Security Administration*, 117 M.S.P.R. 1, ¶ 15 (2011); *Hanna v. Department of Labor*, 80 M.S.P.R. 294, ¶ 16 (1998), *aff'd*, 18 F. App'x 787 (Fed. Cir. 2001). However, her potential for rehabilitation is diminished as a mitigating factor by her failure to admit that her conduct was improper. *See Singletary v. Department of the Air Force*, 94 M.S.P.R. 553, ¶ 15 (2003), *aff'd*, 104 F. App'x 155 (Fed. Cir. 2004). Additionally, the appellant was on notice that her conduct was improper, but she still continued to engage in the conduct regarding the Mary Kay products.

¶24	On review, the appellant asserts that the administrative judge erred in finding that her proffered comparators were not similarly situated to her because they were not charged with the same misconduct. ID at 22-23; PFR File, Tab 5 at 25-29. The administrative judge relied on the standard set forth in *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 6 (2010), in finding that the appellant did not meet her burden of identifying a similarly situated employee. ID at 22. Since the initial decision was issued, the Board has overruled *Lewis* to clarify that, when analyzing a disparate penalty claim, broad similarity between

employees is insufficient to establish that they are appropriate comparators, and the relevant inquiry is whether the agency knowingly and unjustifiably treated employees who engaged in the same or similar offenses differently. *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶¶ 11-14. The administrative judge distinguished the appellant from the proffered comparators because, although the agency charged each comparator with behavior deemed threatening or harassing by their subordinates, the appellant was charged with additional misconduct. ID at 22. The administrative judge erred in so finding because one of the proffered comparators was similarly charged with behavior deemed threatening or harassing by a subordinate and additional misconduct. IAF, Tab 37 at 4-9. The administrative judge's finding was not prejudicial to the appellant, however, because this comparator was not charged with additional misconduct that was the same or similar to that of the appellant. *See Singh*, 2022 MSPB 15, ¶ 17 (opining that the Board should not attempt to weigh the relative seriousness of various offenses in order to determine whether two employees who committed different acts of misconduct were treated disparately); *Reid v. Department of the Navy*, 118 M.S.P.R. 396, ¶¶ 22-23 (2012) (finding that the appellant did not establish that employees engaged in conduct similar to his when their conduct was only similar with respect to one charge). The appellant thus has not established that the proffered comparators engaged in the same or similar offenses as those at issue here. In any event, it appears that the penalty imposed on the comparator who was charged with additional misconduct resulted from a settlement agreement. IAF, Tab 37 at 4-12. The Board has held that, "if another employee receives a lesser penalty, despite apparent similarities in circumstances, as the result of a settlement agreement, the agency is not required to explain the difference in treatment." *Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 10 (2013). Here, therefore, even assuming a similarity in circumstances, the appellant did not show a disparity in penalties.

¶25    Moreover, the deciding official properly considered that he did not want the appellant to supervise her previous team, in particular because her misconduct involved her threatening a subordinate and thus went to the heart of her duties and responsibilities as a supervisor. HCD 1 (testimony of the deciding official); *see Hanna*, 80 M.S.P.R. 294, ¶ 17. We also considered that he did not want the appellant to interact with customers because two customers witnessed the appellant's threatening behavior. HCD 1 (testimony of the deciding official); *see Hutson v. Department of the Interior*, 67 M.S.P.R. 432, 447 (1995). The deciding official testified that he wanted to impose a penalty that would allow the appellant to work at the same location in a position whereby she could maintain her benefits and retirement. HCD 1 (testimony of the deciding official). He further testified that, although other managers had been demoted fewer steps than had the appellant, part of the difference in treatment was attributable to the availability of positions. ID at 21-22; HCD 1 (testimony of the deciding official). We find these to be reasonable and appropriate considerations under the circumstances.

¶26    For the first time at the hearing, the appellant testified that she would have been willing to relocate nationwide for reassignment to a nonsupervisory position of Small Business Sales Specialist at her former EAS-25 level. ID at 21-22; HCD 1 (testimony of the appellant). She asserts that a demotion to an EAS-23 level is the most severe reasonable penalty. PFR File, Tab 5 at 29. We agree with the administrative judge that the appellant's alleged willingness to relocate did not provide a reason for disturbing the penalty, especially as there was no evidence that the position she identified was available. ID at 23; HCD 1 (testimony of the appellant). On review, the appellant has not identified any available position, particularly not a nonsupervisory position that does not involve interacting with the public. The agency was in the best position to determine whether placement in an available position would address the deciding official's concerns about the appellant's duties. Based upon the above and our

considering the record as a whole, we find that the administrative judge properly sustained the demotion, and we affirm the initial decision. *See Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 32 (2009) (finding that, given the multiplicity of charges, the serious nature of each of the charges, the appellant's status as a supervisor, his admissions regarding his misconduct, and the deciding official's proper consideration of the relevant *Douglas* factors, the administrative judge properly affirmed the demotion penalty).

¶27    Accordingly, we affirm the initial decision.

## NOTICE OF APPEAL RIGHTS[5]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain

judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. \_\_\_\_ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit

---

[6]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                          /s/ for

                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.