**Vanessa A. HICKS, Petitioner,**

v.

**DEPARTMENT OF THE TREASURY, Respondent.**

No. 04–3028.

United States Court of Appeals, Federal Circuit.

DECIDED: July 23, 2004.

David R. Feniger, Principal Attorney, Minneapolis, MN, David M. Cohen, Deborah A. Bynum, of Counsel, Department of Justice, Washington, DC, for Respondent.

Michael G. Kane, Principal Attorney, Cashdan, Kane, Washington, DC, for Petitioner.

Before NEWMAN, LOURIE, and DYK, Circuit Judges.

LOURIE, Circuit Judge.

Vanessa Hicks appeals from the final decision of the Merit Systems Protection Board affirming her removal from her position as a GS–13 Policy Analyst at the Internal Revenue Service ("IRS"). *Hicks v. Dep't of Treasury*, No. DC–0752–02–0536–I–1, 95 M.S.P.R. 295, 95 M.S.P.R. 295 (M.S.P.B. Sept. 25, 2003) (*"Final Order"*). We *affirm*.

## BACKGROUND

The IRS removed Ms. Hicks from her position, based on three charges: (1) improperly accessing taxpayer data via the IRS's Integrated Data Retrieval System ("IDRS") without official reason; (2) improperly depositing a Treasury check ad-dressed to her deceased father into her personal checking account; and (3) failing to answer questions in a matter of official interest. *Hicks v. Dep't of Treasury*, No. DC–0752–02–0536–I–1, slip op. at 2 (M.S.P.B. Sept. 26, 2002) (*"Initial Decision"*). The IRS found that Hicks had accessed the tax data of her co-worker Lynne Bowen's grandmother (Keevie Johnson) and uncle (David Johnson), as well as the tax data of a man named Melvin Booker. *Id.* at 4, 10. Mr. Booker is the father of Hicks' niece and was also listed as a dependent on the tax return of Hicks' deceased father, *id.* at 10–11, apparently signed by Hicks' mother just two days after Hicks accessed Booker's data, *id.* at 16. When the refund from that tax return arrived, Hicks endorsed it herself and deposited it in her checking account, allegedly at her mother's request. *Id.* at 22. In the years preceding her accessing the Johnsons' and Booker's accounts, Hicks had signed various forms acknowledging the IDRS rules, including rules stating that employees may not attempt to access accounts of family members, friends or others in which the employee has a personal or financial interest, and that, if an employee is asked by another employee to access an account, he or she must verify that the requested access is for official business reasons and will be held responsible if the access is unauthorized. *Id.* at 3. Hicks also signed a statement acknowledging that she understood that the willful unauthorized access or inspection of tax returns and return information can result in severe penalties, including removal from employment. *Id.*

During the IRS's investigation of Hicks' unauthorized access ("UNAX"), a union representative, Frances Emerson, advised Hicks not to answer the agency's questions, despite Hicks' having signed Treasury Inspector General for Tax Ad-

ministration ("TIGTA") Form 8112, acknowledging her understanding that an employee had the option to remain silent during an investigation but that she could be subject to removal if she failed to answer material and relevant questions relating to the performance of her duties as an employee; and TIGTA Privacy Act Notice 417, which explained that, as an employee, Hicks was required to answer questions during the interview and that failure to do so could subject her to dismissal from federal employment or other disciplinary or adverse action. *Id.* at 26–27. Later, the agency informed Hicks' union that it would offer Hicks a chance to be re-interviewed. *Id.* at 30–31. The union apparently rejected this opportunity on Hicks' behalf without informing Hicks. *Id.* at 31. Hicks was then removed from her position.

Hicks appealed her removal to the Board. Hicks argued before the Board's Administrative Judge ("AJ") that she did not recall the events at issue, but that Bowen must have asked her to access the Johnsons' accounts and assured her that the access was business-related. *Id.* at 4. She also asserted that she did not know the Johnsons or know that they were relatives of Bowen's, despite Ms. Johnson's statement during the investigation that Hicks was a "family friend" and a friend of her granddaughter, Lynne Bowen. *Id.* at 6.

According to Hicks, there were fifteen employees in the department and only three computers, so employees frequently asked each other to access accounts. *Id.* at 4. Hicks also denied remembering who Mr. Booker was, *id.* at 12–13, even though he fathered her niece and was listed by Hicks' mother—who Hicks apparently visited twice a week—as a dependent on the tax return that she signed for her deceased husband, *id.* at 18. Hicks also presented the testimony of her mother, who asserted that she had asked Booker to call Hicks during preparation of the tax return, *id.* at 14, and that she also asked Hicks to deposit the refund check into an account that they allegedly shared, *id.* at 23.[1] Hicks also argued that the deposit could not have been improper, because the bank allowed it. *Id.* Hicks contended that the penalty of removal was excessive, and that she should not have been held responsible for the union representative preventing her from cooperating with the agency. Finally, Hicks asserted that her removal was the result of race and gender discrimination based on disparate treatment and disparate impact. *Id.* at 32–33.

In a thorough opinion, the AJ found Hicks and her mother to be less credible than the agency's witnesses and found that Hicks had not provided any evidence to corroborate her assertions. *Id.* at 6–9, 14–19, 23–25. The AJ concluded that the agency had satisfied its burden of proving by a preponderance of the evidence that Hicks had accessed accounts without a business purpose, *id.* at 21, and that she had improperly deposited her father's check, as she provided no evidence that she was the executor of his estate, *id.* at 25. The AJ also observed that it is well settled that a party is responsible for the actions of her freely chosen representative, so the union representative's apparent interference was no defense to the charge that Hicks failed to cooperate during the investigation. *Id.* at 31–32. The AJ rejected Hicks' discrimination argument for a complete lack of evidence. *Id.* at 32–34. Finally, the AJ ruled that the IRS's penal-

---

1. According to Hicks' mother, her name was not on the account because she did not want the Social Security Administration ("SSA") to know that she had a checking account, for fear that the SSA would decrease her benefits.

ty of removal was reasonable, and that the first and third charges were especially serious and by themselves would warrant removal. *Id.* at 34–38.

Hicks appealed to the full Board, which affirmed the AJ's decision, rendering that decision final. *Final Order,* slip op. at 1–2. Hicks timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Congress has expressly limited the scope of our review in an appeal from the Board. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *Ellison v. Merit Sys. Prot. Bd.,* 7 F.3d 1031, 1034 (Fed.Cir.1993). "Under the substantial evidence standard of review, a court will not overturn an agency decision if it is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Jacobs v. Dep't of Justice,* 35 F.3d 1543, 1546 (Fed.Cir. 1994) (quoting *Consol. Edison Co. of N.Y. v. NLRB,* 305 U.S. 197, 199, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Moreover, the Supreme Court has explained that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

■ On appeal, Hicks argues that the Board's decision is not supported by substantial evidence and that the Board's action was arbitrary and capricious. In particular, with respect to the first charge, Hicks argues that the agency failed to produce substantial evidence that Hicks knew who the Johnsons were at the time Bowen asked her to access their accounts, and that the government has therefore not proved the first and second specifications of the charge.[2] Hicks explains that it is irrelevant that Keevie Johnson said in 2000 that Hicks was a family friend, because the agency produced no evidence that Hicks knew the Johnsons in 1997 when the alleged unauthorized accesses were made. Hicks also argues that the agency failed to produce substantial evidence that Hicks did not access Booker's account either for official reasons or inadvertently, and that the government also has not proved the third specification of the first charge. According to Hicks, the agency failed to show that Booker was a friend or relative of hers. In any event, Hicks contends, the AJ analyzed the case improperly because he determined that the unauthorized accesses did not have to be willful. With respect to the second charge, Hicks asserts that the government failed to produce substantial evidence that there was anything wrong with Hicks' endorsing a check issued to her late father, and, she contends, the AJ acted arbitrarily and capriciously in refusing to credit Hicks' and her mother's testimony. With respect to the third charge, Hicks contends that the agency did not present substantial evidence that Hicks acted unreasonably when she was prevented from answering questions by the conduct of her union representative. Finally, Hicks asserts that the penalty of removal was not commensurate

2. The accesses of Keevie and David Johnson's accounts are referred to in the Board's opinion and in the parties' briefs as "specifica-

tions 1 and 2," respectively, of the first charge, and the access of Booker's account is "specification 3."

with the alleged wrong and was excessive, particularly in view of the fact that Bowen received only a five-day suspension for her own misdeeds.

The government responds that the AJ meticulously weighed all of the evidence, including the testimonial evidence from Hicks and her mother, and then, based upon the totality of evidence, and after weighing the credibility of the witnesses, determined that the agency met its burden of proof as to all three specifications of the first charge, as well as the second and third charges. The government points out that Hicks is not entitled to a reweighing of the evidence on appeal. The government also argues that there were inconsistencies in Hicks' testimony. For example, she initially argued that the Johnsons had each called her, but, when it was pointed out that the accesses were only 37 seconds apart, she changed her story and said that Bowen asked her to access them. Even if Hicks was unaware of the identity of the Johnsons, the government asserts, she would still be liable for her unauthorized access based upon the rules she agreed to, because willfulness is not required. According to the government, Agent Davids of the IRS testified that Booker had last filed a tax return in 1988 and that the audit trail for the access that Hicks made to Booker's account shows that the access commands that Hicks used were not commands that an employee would use, as those commands do not allow for identity verification. The government also argues that Hicks presented no evidence that her mother authorized the deposit of her late father's refund, and that her mother's story is implausible. Finally, the government argues, Hicks was on notice that her failure to answer the agency's questions would subject her to dismissal or other disciplinary action, and the fact that the union representative did not communicate the agency's willingness to re-interview Hicks is irrelevant, because Hicks was not entitled to a second chance.

We agree with Hicks that the Board should not have sustained the first and second specifications of the first charge, i.e., those with regard to access of the Johnsons' accounts. The forms that Hicks signed provide that if an employee is asked by another employee to access an account, she must verify that the request is for official business. There is no evidence of record to contradict Hicks' testimony that she actually did verify with Bowen that the access of the Johnsons' accounts was for an official purpose. The Board found that "inconsistencies in the appellant's explanations [for why the Johnson accounts were accessed] undermine her credibility." *Initial Decision*, slip op. at 9. However, the record reveals no such inconsistency in appellant's testimony.

■ Nonetheless, we agree with the government that the Board otherwise properly sustained all three charges. First, as the government has explained, it is critical that taxpayers' information maintained by the IRS be in a system that is confidential and secure. Accordingly, Department of Treasury Form 9546, entitled "IDRS Security Rules" specifically admonishes: "1. Do not attempt to access (research or change) your own account or that of a spouse, other employee, friend, relative, or any other accounts in which you may have personal or financial interest. 2. Access only those accounts required to accomplish your official duties." Hicks signed a copy of Form 9546 on March 1, 1995, beneath an acknowledgement stating: "I have read and understand the above IDRS Security Rules. I understand that failure to follow these rules will result in appropriate administrative action up to and including removal." [3] The AJ found

---

3. The IRS points out that Hicks also signed a

"Certificate of Annual UNAX Awareness

substantial evidence that, by accessing Booker's account information, Hicks violated those rules.

With respect to the Booker access, the AJ found Hicks' and her mother's testimony to be unreliable. This court's precedent is clear that credibility determinations are the province of the official who heard the witnesses' testimony and saw their demeanor, *Griessenauer v. Dep't of Energy*, 754 F.2d 361, 364 (Fed.Cir.1985), and "are virtually unreviewable" upon appeal, *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed.Cir.1986). Because we conclude that the government has met its burden of proving the third specification, we affirm the Board's decision with respect to the first charge. *See Guise v. Dep't of Justice*, 330 F.3d 1376, 1380 (Fed. Cir.2003) ("Because one of the two specifications of charge three is supported by substantial evidence, the charge as a whole must be sustained.").

■ There is also substantial evidence supporting the AJ's decision with regard to the second charge against Hicks. In particular, it is undisputed that Hicks endorsed the check made out to her father and deposited it, and it is also undisputed that she provided no evidence that she was the executor or administrator of her father's estate or that she was otherwise authorized to deposit the check. Her defense that she deposited the check at her mother's request does not help her, because there is no evidence that her mother was herself authorized to deposit the check. The check was made out to Hicks' father, not to her mother or to her father's estate, and the record does not reflect that Hicks' mother was the administrator or executor of the estate.

■ With regard to the third charge, it is undisputed that Hicks did not cooperate in the investigation. Moreover, the fact that her union did not communicate the government's offer to re-interview her is irrelevant, because she had no entitlement to a second interview.

■ Finally, we review penalty decisions to determine whether they are "grossly disproportionate" or constitute an "abuse of discretion." *Weston v. U.S. Dep't of Hous. & Urban Dev.*, 724 F.2d 943, 949 (Fed.Cir.1983). We "cannot and will not disturb a penalty unless it is unauthorized or exceeds the bounds of reasonableness because it is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion, or where the record is devoid of any basis demonstrating reasonableness." *Dominguez v. Dep't of Air Force*, 803 F.2d 680, 684 (Fed.Cir.1986). We cannot say on the basis of this record that the penalty of removal is grossly disproportionate to Hicks' offenses. First, the record shows that Hicks was on notice of and indeed acknowledged that violation of the IRS's UNAX policies would result in "administrative action up to and including removal." Second, there was credible testimony that Hicks' unauthorized deposit of her father's check "call[ed] into question the propriety of an IRS employee," *Initial Decision*, slip op. at 35, which could have undermined public confidence in the agen-

Training" on December 17, 1997, by which she acknowledged that she had been informed that, under law, she could only access or inspect tax returns and return information "for a business purpose, and that the willful unauthorized access or inspection of tax returns and return information can result in severe penalties, including imprisonment ...

a fine, ... dismissal from employment, and the costs of prosecution." According to the IRS, a video accompanying that UNAX training also stated that "[in proven UNAX cases], unless there are mitigating circumstances, the appropriate management action will be removal."

cy. Third, the record also shows that Hicks had acknowledged that she could be subject to removal if she failed to answer material and relevant questions relating to the performance of her duties as an employee. Fourth, although Hicks claims differential treatment, referring to the five-day suspension imposed on Bowen for her unauthorized access, we agree with the government that Hicks and Bowen were not similarly situated, because there was no evidence that Bowen ever deposited anyone else's check into her checking account or that she refused to cooperate with investigators. Lastly, the AJ found all of Hicks' actions at issue to be intentional. *Id.* at 36. Accordingly, we see no abuse of discretion.

We have considered Hicks' remaining arguments and find them unconvincing.

### CONCLUSION

Because the Board's decision was supported by substantial evidence, contained no procedural irregularities, and was not contrary to law, we affirm.