# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| KEITH R. HANKINS,<br>    Appellant, | DOCKET NUMBER<br>DA-0752-13-0423-I-1 |
| v. | |
| DEPARTMENT OF THE ARMY,<br>    Agency. | DATE: September 8, 2014 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Andrea Goplerud</u>, Esquire, and <u>Jessica L. Parks</u>, Esquire, Washington, D.C., for the appellant.

<u>Norbert S. Walker</u>, El Paso, Texas, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1    The appellant has filed a petition for review of the initial decision, which sustained his removal.  Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2    The appellant was a GS-13 Supervisory Range Officer for the agency at Fort Bliss, Texas. Initial Appeal File (IAF), Tab 6, Subtab 4A. As such, the appellant was responsible for supervising staff and carrying out various functions at the Fort Bliss training complex and firing range. IAF, Tab 6, Subtab 4E. On November 14, 2011, the appellant was designated primary Accountable Officer at the Range Branch.[2] IAF, Tab 6, Subtab 4F at 6. This means that the appellant was responsible for maintaining formal accounting records for range property in accordance with Army Regulation (AR) 735-5 § 2-12, Policies and Procedures for Property Accountability. *Id*., Subtab 4L at 2, 18-19. During the time period in question, the appellant worked at Site Monitor, a Fort Bliss administrative facility. Hearing Compact Disc (HCD) (testimony of the appellant).[3]

¶3    This case concerns the mishandling of certain property delivered to Site Monitor. The agency constructed some "mock villages" on the range for

---

[2] It appears that the appellant did not actually receive this memorandum designating him Accountable Officer until November 22, 2011. IAF, Tab 6, Subtab 4F at 6.

[3] There are portions of the hearing transcript in the record, but the record does not contain a complete transcript.

purposes of combat training. *See id.* In May 2011, Site Monitor began receiving and storing furniture destined to furnish these mock villages and create a realistic combat environment for the soldiers training there.[4] *Id.*; IAF, Tab 4, Subtab 4D at 24, 26. There was a large amount of furniture involved—over 3,000 pieces. HCD (testimony of the proposing official).

¶4 In January 2012, some agency employees informed the appellant's first-line supervisor that a certain employee was misappropriating Site Monitor furniture. IAF, Tab 6, Subtab 4K at 1. The agency investigated the matter internally, and several employees were disciplined as a result. IAF, Tab 6, Subtab 4F at 2-4, Tab 14 at 14-45; HCD (testimony of the proposing and deciding officials). Among those disciplined was the appellant, whom the agency removed on three charges: (1) "Failure to observe a written regulation or procedures in safeguarding Army property"; (2) "Misuse of Position and Army Property"; and (3) "Failure to cooperate in a properly authorized investigation." IAF, Tab 6, Subtabs 4A, 4B, 4D. Under the first charge, the agency alleged that there was no inventory or accounting of the furniture when Site Monitor received it, that it was released to training areas without proper documentation, and that this failure was in violation of AR 735-5. IAF, Tab 6, Subtab 4C at 1, Subtab 4L. Under the second charge, the agency alleged that the appellant allowed two employees to take furniture for their personal use. IAF, Tab 6, Subtab 4C at 1. Under charge 3, the agency alleged that, during two investigatory interviews, the appellant was evasive and refused to answer questions directly, candidly, and completely. *Id.* at 2.

¶5 The appellant proceeded through the formal equal employment opportunity (EEO) process and, after the agency issued a final decision finding no

---

[4] The parties frequently refer to this furniture as "DRMO furniture." "DRMO" stands for "Defense Reutilization and Marketing Office," which is apparently the Department of Defense component that originally acquired the furniture for the government. IAF, Tab 14 at 10. The record does not indicate the dates that the furniture deliveries spanned.

discrimination, he appealed to the Board. IAF, Tab 1, Tab 6, Subtab 3. After a hearing, the administrative judge issued an initial decision finding that the agency failed to prove charge 2. IAF, Tab 17, Initial Decision (ID) at 7-10. Nevertheless, he sustained charges 1 and 3, and found that these charges alone supported the removal penalty. ID at 2-7, 10-13, 15-17. The administrative judge also considered the appellant's claim that his removal was in retaliation for protected EEO activity but found that the appellant failed to prove this affirmative defense. ID at 13-15.

¶6　　　The appellant has filed a petition for review, arguing that the administrative judge erred in sustaining charges 1 and 3, that the removal penalty was not reasonable for these two charges, and that the administrative judge did not analyze his EEO retaliation defense properly. Petition for Review (PFR) File, Tab 5. The agency has filed a response to the petition for review, PFR File, Tab 8, and the appellant has filed a reply to the agency's response, PFR File, Tab 9.

Charge 1

¶7　　　As to charge 1, "Failure to observe a written regulation or procedures in safeguarding Army property," the appellant argues that under *Mendez v. Department of the Treasury*, 88 M.S.P.R. 596 (2001), the charge should not be sustained because his failure to account for the furniture was consistent with his training and prior agency practice. PFR File, Tab 5 at 13. We disagree. *Mendez*, 88 M.S.P.R. 596, ¶ 2, involved a charge of negligence in the performance of duties. The Board found that the appellants were not negligent even though they failed to follow the agency handbook because their actions were consistent with their training, knowledge, and experience, as well as actual agency practices. *Id*., ¶¶ 24-28. Charge 1 in this case contains no element of negligence or intent. IAF, Tab 6, Subtab 4D at 1. The issue is strictly whether the appellant's actions

violated written agency regulation or procedure. We find that the Board's analysis in *Mendez* does not apply to the facts of this case.

¶8        It is undisputed that the appellant made no accounting of the furniture in question. The issue is whether AR 735-5 required him to do so.[5] There is a great deal of evidence and argument in this appeal concerning what accounting, if any, the appellant and various other agency employees believed AR 735-5 to require. As far as proof of charge 1 is concerned, the subjective beliefs of these individual employees are irrelevant except to the extent that they shed light on the question of what AR 735-5 objectively requires. In this regard, there appear to be two factual disputes: (1) whether the furniture is "durable" or "expendable" under AR 735-5, chapter 7; and (2) whether Site Monitor was the "user" of the furniture for purposes of AR 735-5, chapter 7. PFR File, Tab 5 at 10-16; HCD (testimony of the proposing official). The appellant argues that, under AR 735-5, end users need to account for durable property but do not need to account for expendable property. PFR File, Tab 5 at 10-16. Thus, to prove its charge, the agency must show either that the furniture was durable property or that Site Monitor was not the end user. He argues that the agency is unable to show either. *Id.*

¶9        As to the first question, we agree with the appellant that the agency failed to show that the Site Monitor furniture was durable property. The appellant explained why he believed that the furniture was expendable property, and this explanation makes sense on its face, i.e., that the furniture was destined for use as training aids and would likely be rendered unserviceable during that process. *See* AR 735-5, § 7-4c; IAF, Tab 6, Subtab 4L at 25, Tab 9 at 6; HCD (testimony of

---

[5] The agency argues that the appellant's failure to account for the furniture also violated a May 27, 2009 memorandum concerning "Accountability of Garrison and Quarters Furnishings." IAF, Tab 6, Subtab 4F at 34-35. We find that the agency failed to prove that this memorandum applied to the furniture stored at Site Monitor. There is no evidence that the Site Monitor furniture was intended to furnish any garrison or quarters, and there is unrebutted testimony that this memorandum was meant to address the specific situation of a troop realignment that was occurring at that time. HCD (testimony of the appellant).

the appellant).  There is no countervailing explanation from the agency as to why the furniture should be classified as durable property.  All that the agency provided was a conclusory assertion from a Logistics Management Specialist stating, without elaboration or specific reference to any written agency policy or procedure, that the Site Monitor furniture was classified as durable.[6]  IAF, Tab 6, Subtab 4F at 67.  In fact, our review of the actual language of the regulation leaves us wanting an explanation of why even furniture put to normal use should be classified as "durable" rather than "nonexpendable."  *See* AR 735-5, §§ 7-2, 7-6;  IAF, Tab 6, Subtab 4L at 24, 26.  The agency's responses regarding this technical regulation are insufficient for us to replicate its analysis of the issue much less reach the same conclusion.  *See Glover v. West*, 185 F.3d 1328, 1332 (Fed. Cir. 1999) (regulatory analysis begins with the language of the regulation itself).

¶10      Nevertheless, we find that the agency proved that Site Monitor was not the "user" of the furniture and was therefore required to account for it regardless of whether it was durable or expendable.  *See* AR 735-5, §§ 7-5a, 7-7a (accounting for nonexpendable, expendable, and durable property is all the same until it is issued to the user); IAF, Tab 6, Subtab 4L at 25-26.  The appellant cites a single line of the hearing transcript in which the deciding official appears to state that the appellant himself was the end user of the furniture.  PFR File, Tab 5 at 16, 109.  However, this snippet of the deciding official's testimony is not an accurate reflection of the evidence as a whole.  In fact, on the very transcript page that the appellant cites, the deciding official appears also to state that the soldiers in the training areas were the end users.  *Id*. at 109.  We think that the better evidence comes from the proposing official, who testified on this specific matter for more

---

[6] The proposing official echoed the Logistics Management Specialist's opinion during his hearing testimony, but likewise did not explain it or tie his conclusion to the actual language of any written policy or procedure.  HCD (testimony of the proposing official).

than 5 minutes and gave reasoned, explained, clear, and unequivocal testimony that the ranges in the field were the end users—not Site Monitor.   HCD (testimony of the proposing official).  This comports with our understanding of how the arrangement with the furniture actually worked, and it is consistent with the employees at Site Monitor having created at least one receipt when they issued furniture to one of the individual ranges, thus indicating that the ranges were distinct entities for purposes of property accountability.  *See* IAF, Tab 6, Subtab 4F at 20.

¶11        Because Site Monitor was not the "user" of the furniture within the meaning of AR 735-5, it was required to keep an accounting of it.  *See* AR 735-5, § 7-5a; IAF, Tab 6, Subtab 4L at 25.  As the Accountable Officer at Site Monitor, the appellant was required to "maintain a formal set of property accounting records that show, on a continuing basis, the item identification, gains and losses, on hand balances, and the conditions and locations of all property assigned to the property account."  AR 735-5 § 2-12a; IAF, Tab 6, Subtab 4L at 18-19.  It is undisputed that he failed to do so.  On this basis, charge 1 is sustained.

Charge 2

¶12        The administrative judge did not sustain charge 2, in which the agency alleged that the appellant allowed two employees to take furniture for personal use without authorization.  ID at 7-10; IAF, Tab 6, Subtab 4D at 1.  The agency has not challenged the administrative judge's findings on this charge and therefore we will not disturb them on review.  *See* 5 C.F.R. § 1201.115 (the Board normally will consider only issues raised in a petition or cross petition for review).

Charge 3

¶13        Regarding charge 3, "Failure to cooperate in a properly authorized investigation," the appellant argues that the agency failed to prove the charge because it could not identify a single question that the appellant refused to answer

or answered untruthfully. PFR File, Tab 5 at 16-22. In particular, the appellant challenges the administrative judge's finding that the appellant was being evasive when he responded "I have no recollection" in response to the question, "Were you aware that . . . furniture was taken from Site Monitor for personal use?" PFR File, Tab 5 at 17; ID at 12-13; IAF, Tab 6, Subtab 4F at 73. The appellant advances a facially plausible explanation on review, asserting that the ambiguity in his answer is due to the lack of a time frame in the question. PFR File, Tab 5 at 17. However, considering that the appellant asked for and received clarification multiple times during the interviews concerning various other questions, *see* HCD (testimony of the appellant, the proposing official, and the interview witness), we do not believe that he would have declined to ask for clarification on this point if he found the question ambiguous. Nevertheless, in the context of this question, we think that the answer can fairly be construed as a "no," albeit an indirect one. IAF, Tab 6, Subtab 4F at 73. The appellant also challenges the administrative judge's disbelief that the appellant did not recall whether he had told a particular employee that the furniture did not need to be accounted for. PFR File, Tab 5 at 17-18; ID at 12-13; IAF, Tab 6, Subtab 4F at 76. We agree with the appellant that there is no basis to doubt the veracity of this answer.

¶14    The appellant also challenges the administrative judge's credibility findings regarding his allegedly "evasive and argumentative" approach to the interviews. PFR File, Tab 5 at 18-19. Specifically, he argues that, in weighing the testimony of the appellant against that of the proposing official and the interview witness, the administrative judge failed to make explicit demeanor findings and failed to analyze the appellant's credibility at all.[7]  *Id*. at 19-22. We disagree. First, the

---

[7] The appellant also argues that the administrative judge erred in his credibility determinations concerning whether the furniture required accounting at Site Monitor. PFR File, Tab 5 at 21; ID at 6. As explained above, these individual employees' opinions of what AR 735-5 required are immaterial to the charge. *Supra*, ¶ 8.

Board has long recognized that demeanor-based credibility determinations that an administrative judge makes during an in-person hearing need not be explicit to be entitled to deference. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (the Board is required to give deference to an administrative judge's credibility determinations when they are based explicitly or implicitly on witness demeanor); *Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 12 (2013) (same). Furthermore, the administrative judge conducted a proper credibility analysis for all relevant witnesses under *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), when he compared the agency witnesses' testimony to one another, reviewed the appellant's written responses to the interview questions, and considered the witnesses' potential bias. ID at 13. We lack a sufficiently sound basis to disturb these credibility determinations. *See Haebe*, 288 F.3d at 1301.

¶15 Although we agree with the appellant that the agency did not show that he outright refused to answer any questions or that he falsely answered any particular question, we still find that the agency presented sufficient evidence to sustain the charge as written. In the notice of proposed removal, the agency explained that the appellant was evasive, refused to answer questions directly, and failed to provide candid and complete answers to the interview questions. IAF Tab 6, Subtab 4D at 2. Based on the agency witnesses' testimony, which the administrative judge credited, as well as the appellant's terse and indirect written answers to the interview, we agree with the administrative judge that charge 3 should be sustained. *See* HCD (testimony of the proposing official and the interview witness); IAF, Tab 6, Subtab 4F at 72-77.

Retaliation for protected EEO activity

¶16 The appellant renews his argument that the agency removed him in retaliation for his testimony against his first-line supervisor in another employee's November 2011 EEO hearing. PFR File, Tab 1 at 27-28.

Specifically, he argues that his first-line supervisor may have influenced the proposing and deciding officials' actions when he gave the appellant a negative performance rating and moved the appellant from Site Monitor to division headquarters shortly after the agency discovered the problem with the Site Monitor furniture. *Id.* However, we find that the appellant's theory of the case is little more than speculation. Even assuming that his poor performance review was based on retaliatory animus, there is no evidence that either the proposing or deciding official took this into account when they removed the appellant. In fact, the deciding official seems to have considered the appellant to have had a good work record. IAF, Tab 6, Subtab 4B at 2. Likewise, the appellant's basis for arguing that his reassignment to division headquarters was retaliatory is unclear because he seems to have testified that this was the deciding official's—not his first-line supervisor's—action. *See* HCD (testimony of the appellant). In any event, there is no evidence that this reassignment had any influence over the removal action.

Penalty

¶17     On review, the appellant argues that his alleged failure to cooperate in the investigation was less serious than the failures to cooperate involved in the cases that the administrative judge cited in his penalty analysis. PFR File, Tab 5 at 22-23; ID at 16-17. He also argues that the administrative judge failed to consider or improperly considered several pertinent penalty factors. PFR File, Tab 5 at 24-27.

¶18     The Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). When not all of the charges are sustained, and the agency has not indicated that that it desires that a lesser penalty be imposed on fewer charges, the Board will consider carefully whether the sustained charges

merited the penalty imposed by the agency and may mitigate to the maximum reasonable penalty. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999); *Douglas*, 5 M.S.P.R. at 308. For the following reasons, we disagree with the appellant that mitigation is warranted.

¶19 In assessing an agency's penalty determination, the Board will consider the totality of the circumstances. *Brown v. Department of Transportation*, 21 M.S.P.R. 572, 573 (1984) (citing *Douglas*, 5 M.S.P.R. at 305). Chief among these is the nature and seriousness of the offense and its relation to the appellant's duties, position, and responsibilities. *Downey v. Department of Veterans Affairs*, 119 M.S.P.R. 302, ¶ 9 (2013); *Williams v. Government Printing Office*, 7 M.S.P.R. 183, 185 (1981). In this regard, we find that charge 2—that the appellant allowed employees to take the furniture for personal use—was the most serious of all the charges. The deciding official's penalty determination relied, in part, on this charge, including the deciding official's belief that the appellant actively assisted another employee in taking the furniture. IAF, Tab 6, Subtab 4B at 2-3; HCD (testimony of the deciding official). However, because this charge is not sustained, it cannot figure into the penalty analysis. *See Mann v. Department of Health & Human Services*, 78 M.S.P.R. 1, 14 (1998).

¶20 As to charges 1, and 3, the deciding official stated that they described "very serious" offenses as well. IAF, Tab 6, Subtab 4B at 2; HCD (testimony of the deciding official). We agree that charge 1 is serious to the extent that the appellant's failure to follow AR 735-5 involved a large amount of government property and touched directly upon his duties as Accountable Officer. Although the appellant argues that there is insufficient evidence to find that his failure to follow AR 735-5 was knowing and willful, PFR File, Tab 5 at 26, as explained above, this charge contains no element of intent, *supra*, ¶ 7. Furthermore, the military services place great importance on the tracking of people and resources. Their missions depend on it. We believe that the appellant must have been aware,

after his decades-long uniformed and civil service career with the Army, that Site Monitor should have been keeping some sort of account of the furniture.

¶21    We also agree with the deciding official that charge 3 was very serious.  As the administrative judge pointed out, the Board has upheld the removal penalty based on a failure-to-cooperate charge alone.  ID at 16-17 (citing *Weston v. Department of Housing & Urban Development*, 724 F.2d 943, 950-51 (Fed. Cir. 1983), *Negron v. Department of Justice*, 95 M.S.P.R. 561, ¶ 34 (2004), and *Hamilton v. Department of Homeland Security*, 117 M.S.P.R. 384, ¶ 12 (2012)).  The appellant is correct that the nature of his failure to cooperate is different than those involved in the cases that the administrative judge cited.  PFR File, Tab 5 at 22-23.  However, we are not persuaded by the appellant's argument regarding degrees of non-cooperation; one either cooperates in an investigation or one does not.  The agency showed that the appellant made the interview process unnecessarily difficult and gave terse and indirect answers to several of the interview questions.  IAF, Tab 6, Subtab 4F at 71-78.  This undermined the purpose of the investigation as surely as if the appellant had provided false information or no information.  Furthermore, the appellant's behavior is not excused by any feelings that he may have had that he was being interrogated or unfairly criticized.

¶22    The administrative judge found that the appellant's status as a supervisor was an aggravating factor.  ID at 15.  The appellant disagrees on the basis that his supervisory role was not directly implicated in charges 1 and 3.  PFR File, Tab 5 at 26.  Although the appellant's supervisory role may not have been directly implicated in charges 1 or 3, we still find that it is relevant to the penalty determination and an aggravating factor on the general basis that supervisors are supposed to be models of conduct and competence and set a good example for their subordinates.  *See Sublette v. Department of the Army*, 68 M.S.P.R. 82, 89-90 (1995).

¶23    The appellant also argues that his work record weighs in favor of mitigation. PFR File, Tab 5 at 26. We agree. The appellant has a substantial, if not particularly lengthy, 7-year work history with the agency with no prior discipline and the highest performance reviews. IAF, Tab 6, Subtab 4A; HCD (testimony of the appellant); *see Bonacchi v. U.S. Postal Service*, 40 M.S.P.R. 364, 370 (1989) (the appellant's 7 years of good service was a mitigating factor).

¶24    The appellant further argues that the administrative judge and the deciding official erred in concluding that he lacks rehabilitative potential. PFR File, Tab 5 at 26-27. Although the agency failed to prove that the appellant was actively involved in misappropriating the furniture, it does not appear that the appellant has ever apologized or otherwise expressed any remorse for his failure to account for the furniture, or for his conduct during the investigative interviews. This does not bode well for his rehabilitative potential. *See Neuman v. U.S. Postal Service*, 108 M.S.P.R. 200, ¶ 26 (2008) (the appellant's rationalizations and lack of remorse indicated little potential for rehabilitation and were aggravating factors).

¶25    We also have considered the appellant's claim of disparate penalties, but we find that he failed to prove it. PFR File, Tab 5 at 24-25*; see Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 5 (2010) (the appellant bears the burden of proving an allegation of disparate penalties). As for two employees whom the agency reprimanded for failing to follow AR 735-5, IAF, Tab 14 at 31-40, we find that the agency had legitimate reasons for treating those employees less harshly than the appellant: they were not supervisors, they were not the Accountable Officer, and they were not charged with failure to cooperate in an investigative interview or with abetting the misappropriation of government property. As for the two employees whom the agency found were actively involved in misappropriating the furniture, the agency treated them exactly the

same as it treated the appellant.  It removed them.[8]   IAF, Tab 14 at 14-18, 20-23. The appellant argues that the agency failed to discipline his first-line supervisor at all, even though he was in charge at Site Monitor and failed to follow a specific directive to account for the furniture.  PFR File, Tab 5 at 25; *see* HCD (testimony of the proposing official and the Supervisory Range Specialist).  However, we find that the appellant and his immediate supervisor were in fundamentally different situations; the appellant's supervisor was not the Accountable Officer, and there is no indication that the agency suspected him of assisting with the misappropriation of property or of not cooperating in an interview.  *See Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 8 (2013) (an agency may rebut a disparate penalties argument by providing a legitimate reason for the difference in treatment).

¶26       Considering the totality of the evidence, including the nature and seriousness of the misconduct at issue, the appellant's good work record, his lack of expressed remorse, and his supervisory status, we agree with the administrative judge that the removal penalty is within the tolerable limits of reasonableness.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

---

[8] As the appellant points out on review, the other employees' removals were mitigated during the grievance process.  PFR File, Tab 5 at 24; IAF, Tab 14 at 19, 24.  We find, however, that the outcome of proceedings in another forum has no bearing on whether the agency imposed disparate penalties.

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.