**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

AARON DARNELL GRANT,
           Appellant,

      v.

DEPARTMENT OF THE TREASURY,
          Agency.

DOCKET NUMBER
DC-0752-14-0237-I-1

DATE: May 27, 2015

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Aaron Darnell Grant</u>, Washington, D.C., pro se.

<u>Byron D. Smalley</u>, Esquire, and <u>Robert M. Mirkov</u>, Esquire, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which sustained the appellant's removal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. We AFFIRM the initial decision, as MODIFIED by this Final Order. We MODIFY the initial decision to clarify the administrative judge's analysis that the appellant failed to prove his due process claims, including his argument that, in imposing the removal penalty, the deciding official considered an aggravating *Douglas* factor—that the appellant's lack of candor was intentional—which was not specifically alleged in the proposal notice. The initial decision, as modified by the Final Order, is the Board's final decision in this matter. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2        The appellant was a Criminal Investigator with the Internal Revenue Service. By notice dated December 7, 2012, the agency proposed the appellant's removal on three charges: (1) being less than candid in a matter of official business (two specifications); (2) failing to follow established procedures (four specifications); and (3) failing to cooperate in an official investigation (one specification). Initial Appeal File (IAF), Tab 12 at 52-55. After conducting a hearing, the administrative judge found that the agency proved all of its charges and specifications by preponderant evidence. IAF, Tab 80, Initial Decision (ID) at 14-28. The administrative judge then considered the appellant's affirmative defenses, finding that the appellant failed to establish harmful procedural error,

denial of due process, retaliation for protected equal employment opportunity (EEO) and/or MSPB activity, or discrimination on the bases of race and/or gender. ID at 28-45. Finally, the administrative judge found nexus between the appellant's misconduct and the efficiency of the service and that the removal penalty was within the bounds of reasonableness. ID at 45-51.

¶3　　　In a timely filed petition for review, the appellant contests virtually all of the administrative judge's findings. Petition for Review (PFR) File, Tab 1.[2] The agency has filed a timely response, to which the appellant has replied. PFR File, Tabs 13, 19.[3]

### ANALYSIS

¶4　　　The Board will grant a petition for review when it is shown that the initial decision contains erroneous findings of material fact. 5 C.F.R. § 1201.115(a). To be material, an alleged factual error must be of sufficient weight to warrant an outcome different from that of the initial decision, and the petitioner must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. *Id.* The Board will not disturb an administrative judge's findings when he considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions of credibility. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987). The Board must give deference to an administrative judge's credibility determinations

[2] Among other matters, the appellant challenges the administrative judge's determinations as to retaliation for protected EEO activity and/or for filing an MSPB appeal, discrimination on the bases of race and/or gender, and the reasonableness of the penalty. PFR File, Tab 1 at 41-50. We affirm the findings on these issues in the initial decision for the reasons stated therein.

[3] Following the close of the record, the appellant filed a number of motions for leave to file new evidence or to brief additional issues. *See* PFR File, Tabs 7, 14, 21, 25, 27, 29, 34, and 36. Because the appellant has not established that any of this evidence or argument is new and material, or that good cause exists for any his motions, they are all denied.

when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing and can overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

¶5    As discussed below, our review shows that the administrative judge complied with the requirements of *Crosby* and *Broughton* in making detailed findings of fact and credibility determinations. In addition, the administrative judge explicitly relied on the demeanor of witnesses in assessing credibility. *See* ID at 15, 18 & n.11. We find no sound basis for overturning any of the administrative judge's credibility determinations and findings of fact.

The administrative judge correctly found that the agency proved all of its charges and specifications.

*The administrative judge correctly found that the agency proved both specifications of its charge that the appellant was less than candid in a matter of official business.*

¶6    Lack of candor and falsification are different, although related, forms of misconduct, and the latter is not a necessary element of the former; thus, lack of candor is a more flexible charge that need not require proof of intent to deceive. *Ludlum v. Department of Justice*, 278 F.3d 1280, 1283-84 (Fed. Cir. 2002). But, intent aside, lack of candor still "necessarily involves a degree of deception." *Id.* at 1284. It may involve lying under oath or failing to reply fully and truthfully, such as failing to disclose something that, in the circumstances, should have been disclosed in order to make the given statement accurate and complete. *Id.*

¶7    Both of the specifications under this charge relate to the appellant's responses under oath during questioning by agency investigators on April 30, 2010. The first specification related to the appellant's negative response on that date to the question of whether he had been involved in a car accident in his government-owned vehicle (GOV). IAF, Tab 12 at 52, 218. The agency alleged that this response was less than candid in that, on May 3, 2010, he told investigators under oath that he had been involved in an accident in his GOV. *Id.*

at 52, 223. The second specification related to the appellant's denial while under oath on April 30 that he had lost his credentials in connection with the car accident involved in the first specification. The agency alleged that this response was less than candid because on May 3, he stated in his affidavit and under oath to agency investigators that he had briefly lost his credentials while addressing the car accident. IAF, Tab 12 at 52, 218, 223. After considering the evidence, the administrative judge concluded that the agency proved both specifications by preponderant evidence. ID at 14-20.

¶8      On review, the appellant asserts that the agency failed to prove either specification. Before addressing the specifics of his contentions in this regard, we note that the appellant effectively conceded on the face of his May 3 affidavit that he had been less than candid on April 30: "I would like to recant some of my answers that I provided to TIGTA[4] Special Agents . . . ." IAF, Tab 12 at 227. The appellant would have had no need on May 3 to "recant" answers provided on April 30 if he had been candid on April 30.

¶9      Regarding the first specification, the appellant alleges that the agency failed to establish that he was involved in a car accident in his GOV, repeatedly describing what happened as a "near miss" rather than an accident. PFR File, Tab 1 at 23-28. This contention contradicts the affidavit the appellant provided agency investigators on May 3: "I got into a fender-bender on the on-ramp from Branch Avenue to Suitland Parkway going towards DC . . . . I was texting on my phone and lost concentration on the road and rear-ended an individual." IAF, Tab 12 at 228. That statement is unambiguous; the appellant admitted that his vehicle "rear-ended" the vehicle in front of him, meaning that his vehicle made contact with the other vehicle. Regardless of whether there was observable damage to either vehicle in this collision, the appellant admitted that he was in an accident,

---

[4] TIGTA is an abbreviation for the Treasury Inspector General for Tax Administration.

and his later denial of being in an accident on April 30 lacked candor, as do his assertions about a "near miss" in his petition for review.

¶10    The appellant asserts on review that the agency failed to establish lack of candor when he denied on April 30 that he ever lost his credentials because the agency failed to establish that he ever lost his credentials. PFR File, Tab 1 at 31-32. In his May 3 affidavit, the appellant admitted that he called a coworker from his cell phone and told her that he had lost his credentials. IAF, Tab 12 at 228. The coworker corroborated that the appellant called her and asked her to look for his credentials. *Id.* at 211. A disinterested third party—a police officer—who was with the coworker at the time of the call overheard her tell the appellant that she was not going to help him look for his credentials and that he needed to report that he had been in an accident. *Id.* at 221. The agency established that the appellant was less than candid when he denied on April 30 that he had lost his credentials.

*The administrative judge correctly found that the agency proved all of its specifications that the appellant failed to follow established procedures.*

¶11    The agency charged that the appellant failed to follow established procedures when he: (1) failed to report that he was involved in a car accident while driving his GOV; (2) texted while driving a GOV; (3) drove his GOV and was wearing his Service-issued firearm while under the influence of alcohol on January 24, 2009; and (4) drove his GOV after consuming alcohol on March 31, 2010. IAF, Tab 12 at 52-53. On review, the appellant admits that he was guilty of the third specification but contends that the administrative judge erred in finding that the agency proved the other three specifications. PFR File, Tab 1 at 26-35.

¶12    The appellant claims he was not guilty of the first specification—that he failed to follow established procedures when he did not report his auto accident of January 24, 2009—based on his assertion that the agency failed to establish that he was involved in an automobile accident. PFR File, Tab 1 at 32-37. That

contention is without merit for the reasons discussed above. There was no dispute that agency policy required the prompt reporting of automobile accidents. *See* IAF, Tab 12 at 97. It was also undisputed that the appellant did not promptly report the automobile accident in which he was involved on January 24, 2009.

¶13    The appellant claims that he is not guilty of the second specification--violating agency policy when he texted while driving a GOV, resulting in an accident—because the agency did not have a specific agency policy prohibiting texting while driving at the time of the incident in January 2009. PFR File, Tab 1 at 34-36. The agency did not, however, rely on a specific policy prohibiting texting while driving; it relied on a policy that provided: "Each employee to whom a vehicle is issued or assigned is responsible for accident prevention and safe driving of government-owned . . . vehicles." IAF, Tab 12 at 53, 96. This provision cited inattentiveness and using a cell phone as examples of violating the policy. *Id.* at 96. In his affidavit of May 3, the appellant admitted that he had violated this policy: "I got into a fender-bender . . . . I was texting on my phone and lost concentration on the road and rear-ended an individual." *Id.* at 228.

¶14    The appellant contends that the agency failed to prove the fourth specification—that he violated agency policy when he drove his GOV after consuming alcohol on March 31, 2010—because the agency failed to introduce objective evidence to prove that he was intoxicated under some legal standard when he drove home that night. PFR File, Tab 1 at 37-38. The agency policy did not require such proof; it prohibited agents such as the appellant from consuming intoxicants at any time during the workday, including mealtimes, "when the agent intends to return to duty that day. This includes … any time while operating a GOV or carrying a firearm." IAF, Tab 12 at 114. The appellant admitted that he drank three or four alcoholic drinks on the evening of March 31, 2010. *See* IAF, Tab 12 at 44, 229. At the hearing, the appellant initially denied that he was still under the influence of alcohol when he drove his GOV home later that night.

Hearing Transcript (HT) (March 19, 2014) at 196-200.[5]  He was impeached by evidence of his earlier deposition, wherein he stated that he was "drunk" in the workplace and continued to be "under the influence" when he drove his GOV home at midnight.  *Id.*; ID at 25; IAF, Tab 31 at 444; HT (March 19, 2014) at 200.

> *The agency proved its charge of failing to cooperate in an official investigation.*

¶15      The basis for this charge was the appellant's failure to provide contact information for the individual whom he rear-ended on January 24, 2009.  On May 3, 2010, while under oath, the appellant told the TIGTA investigator that he no longer had the contact information.  IAF, Tab 12 at 53.  On May 14, 2010, the TIGTA agent telephoned the appellant to see if he had located the requested contact information.  The appellant informed the agent that he would allow TIGTA to see the information but would not allow TIGTA to keep it and then ended the telephone call.  *Id.*  On May 17, 2010, the appellant telephoned the TIGTA agent and asked how providing the requested contact information would help the appellant's case, and the TIGTA agent advised him that the information was needed as part of the investigation.  *Id.*  The appellant never provided TIGTA with the requested contact information.  *Id.*  The appellant contends on review that he was not required to provide the other motorist's contact information to the agency investigators because such a requirement would have violated his Fifth Amendment privilege against self-incrimination.  PFR File, Tab 1 at 38-41.

---

[5] Generally, the oral recording made by a court reporter is the official transcript of a hearing.  *See* 5 C.F.R. § 1201.53(a).  A written transcript will be accepted as the official hearing record when prepared by the court reporter.  5 C.F.R. § 1201.53(b).  Here, the agency obtained the oral recording of the hearing and retained a second company to prepare a written transcript.  PFR File, Tab 24.  Although the recording prepared by the court reporter retained by the Board remains the official hearing record, we cite the written transcript prepared by the second company for convenience.  We have verified the accuracy of the portions of the written transcript cited by listening to the relevant portions of the oral recording.

¶16    We note that the appellant has not disputed the administrative judge's findings that he possessed the requested information and failed to provide it to agency investigators.  Accordingly, the administrative judge had a proper basis for finding that the agency proved the factual allegations supporting the charge.  The only question is whether the appellant was obligated to comply with the agency's request.

¶17    As the agency points out in its response to the appellant's petition for review, PFR File, Tab 13 at 30, an employee has a Fifth Amendment privilege not to answer questions posed during an agency administrative investigation only if he reasonably believes that his statements may be used against him in a criminal trial.  *See Weston v. Department of Housing & Urban Development*, 724 F.2d 943, 947-48 (Fed. Cir. 1983); *Ashford v. Department of Justice*, 6 M.S.P.R. 458, 465 (1981).  According to his own account, the appellant did not invoke his privilege against self-incrimination until May 24, 2010, subsequent to the dates cited in the agency's charge.  IAF, Tab 12 at 44.  In addition, the appellant has cited no reasons to support a conclusion that he reasonably believed that he might be subject to criminal prosecution if he had complied with the request for the other motorist's contact information.  We therefore find that the appellant was obligated to comply with the investigators' request for information and his failure to do so constituted failing to cooperate in an official investigation.

The appellant has failed to establish that he was denied due process of law.

¶18    A tenured public employee has a constitutional right to minimum due process of law under the Fifth Amendment, i.e., prior notice and an opportunity to respond.  *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985).  When an agency intends to rely on aggravating factors as the basis for the imposition of a penalty, such factors should be included in the advance notice of adverse action so that the employee will have a fair opportunity to respond to those factors before the agency's deciding official.  *Lopes v. Department of the Navy*, 116 M.S.P.R. 470, ¶ 5 (2011); *see Ward v. U.S. Postal Service*, 634 F.3d

1274, 1280 (Fed. Cir. 2011). Not every failure to list an aggravating factor in the proposal notice rises to the level of a due process violation; a due process violation occurs only when "new and material information" is considered that is "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Bennett v. Department of Justice*, 119 M.S.P.R. 685, ¶ 7 (2013) (quoting *Ward*, 634 F.3d at 1279).

> *The agency did not violate the appellant's due process rights by failing to advise him how each of the Douglas factors would be applied to the offenses.*

¶19    On review, the appellant points out that the proposal notice did not describe how each of the *Douglas* factors[6] applied to the charged misconduct and contends that this failure denied him due process of law. PFR File, Tab 1 at 7-9. The appellant lays particular emphasis on the fact that the proposal notice did not specifically discuss the fourth or ninth *Douglas* factors, i.e., his work record and potential for rehabilitation. PFR File, Tab 1 at 5-7, 16.[7]

¶20    The proposal notice did explicitly discuss the first and second *Douglas* factors, the nature and seriousness of the offense and its relation to the appellant's duties, position, and responsibilities, and the appellant's job level and type of employment. IAF, Tab 12 at 54. The Board often has stated that the first factor is the most important in assessing the reasonableness of the penalty. *E.g., Brough v. Department of Commerce*, 119 M.S.P.R. 118, ¶ 11 (2013); *Batts v. Department of the Interior*, 102 M.S.P.R. 27, ¶ 11 (2006); *Williams v. Government Printing Office*, 7 M.S.P.R. 183, 185 (1981). In addition to the first two *Douglas* factors, the agency's proposal and decision notices cited several

---

[6] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board listed 12 non-exclusive factors to be considered in assessing the reasonableness of an agency-imposed penalty.

[7] The appellant's contentions regarding the fourth *Douglas* factor are discussed below, ¶¶ 24-25.

other *Douglas* factors as "aggravating" in nature: (5) Effect on Future Performance; (6) Consistency with Other Penalties; (8) Clarity of Notice; (9) Potential for Rehabilitation; and (11) Adequacy of Alternative Sanctions. IAF, Tab 12 at 39, 5, 66-67; *see Douglas*, 5 M.S.P.R. at 305-06.[8]

¶21    Although the proposal notice did not expressly discuss how each of the "aggravating" *Douglas* factors applied to the appellant's situation, it did provide him a Guide to Penalty Determinations, which described in general terms how each of the *Douglas* factors is used in determining a reasonable penalty. *See id.* at 56, 65-68. The Guide states that factor 5—Effect on Future Performance— includes the effect of the offense upon the employer's confidence in the employee's ability to perform assigned duties and loss of trust in the employee's ability to perform assigned duties in the future. *Id.* at 66. Such loss of confidence was specifically raised in the proposal notice ("Your failure to meet these standards seriously impairs the Service's and public's ability to rely on your veracity, ability to use sound judgment and follow established procedures and directives"). *Id.* at 54. For factor 9—Potential for Rehabilitation—the Guide states that an employee who admits misconduct and shows remorse displays potential for rehabilitation, while an employee who rationalizes his wrongdoing, fails to take responsibility, or does not show an understanding of why his behavior was wrong is not a good candidate for rehabilitation. *Id.* at 67. It also states that lying during an investigation may be viewed as a lack of potential for rehabilitation. *Id.* The application of this *Douglas* factor to the charged misconduct was self-evident. Although the proposal notice did not specifically discuss *Douglas* factor 8, Clarity of Notice, the appellant was notified that the agency considered this an aggravating factor, and he made no claim that he was

---

[8] The agency's listing of factors omits *Douglas* factor 7, which is the consistency of the penalty with any applicable agency table of penalties. *See* IAF, Tab 12 at 66; *see also Douglas*, 5 M.S.P.R. at 305. Accordingly, the factors numbered as 8-12 in *Douglas* are listed in the agency's document as factors 7-11. IAF, Tab 12 at 66-67. We use the agency's numbering of factors.

unaware of the need to report auto accidents, to refrain from driving his GOV after consuming alcohol, or to respond fully and truthfully during an agency investigation.

¶22    In sum, although the agency's proposing official could have discussed with more specificity why he considered *Douglas* factors 5, 6,[9] 8, 9, and 11 to be factors aggravating the penalty to be imposed, and the deciding official could have explained with more specificity why he considered them to be aggravating factors, the appellant was on fair notice of those factors and had a reasonable opportunity to respond to them. That he chose to ignore them in his response to the proposed removal, *see* IAF, Tab 12 at 42-45, is his own responsibility. We conclude that the agency's failure to discuss these aggravating factors with more specificity in its proposal notice was not "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Ward*, 634 F.3d at 1279.

> *The agency did not violate the appellant's due process rights by failing to give him notice of workplace performance as an aggravating factor.*

¶23    The agency's December 7, 2012 proposal notice did not state that the agency considered *Douglas* factor 4—Work Record—as an aggravating factor. *See* IAF, Tab 12 at 54. On December 21, the proposing official provided the appellant additional materials that the agency stated would be considered and relied on in connection with the proposed removal. *Id.* at 58. These additional materials concerned the appellant's alleged failure to comply with his supervisor's directives to input his time in the agency's electronic system. *Id.* at

---

[9] Although listed in both the proposal and decision notices as an aggravating factor, the consistency of the penalty with that imposed on other employees for similar offenses was not specifically discussed in either. *See* IAF, Tab 12 at 39, 54. The deciding official testified that he considered this an aggravating factor in that no other employees had been disciplined for all of the misconduct as had the appellant. HT (March 18, 2014) at 251-52. We see no basis for finding that the deciding official's limited consideration of this factor involved "new and material information" that could constitute a due process violation.

59-61. At the hearing, the deciding official testified that this evidence "could apply" under *Douglas* factor 4 in that it contained some information about the appellant's ability to get along with coworkers and some unprofessional conduct with coworkers but "that didn't really aggravate the penalty in my opinion." HT (March 18, 2014) at 249-50. The administrative judge found that the deciding official properly considered this information under *Douglas* factor 4. ID at 50-51. The appellant contends that he was denied due process because the deciding official considered a new aggravating factor not listed in the proposal notice. PFR File, Tab 1 at 5-7.

¶24    This situation presents the converse of the *Douglas* factors described above, in that the agency listed those factors in the proposal notice but did not describe how they applied with particularity. By contrast, in this allegation of a due process violation, the agency supplied the appellant with the additional material it would be considering but did not identify the *Douglas* factor(s) to which the new material related. This allegation is also unlike the due process allegations described above in that the appellant did address the reasons why he had not inputted his time into the agency's electronic system. IAF, Tab 12 at 45. That the appellant was provided with the material in question, was advised that it would be considered in connection with the proposed removal, and not only had the opportunity to respond to it but in fact did so precludes a finding that he was denied due process of law in violation of the Fifth Amendment. The agency's failure to describe with particularity how it was viewing the additional material was not "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Ward,* 634 F.3d at 1279.

*The agency did not deny the appellant due process of law by considering statements by coworkers.*

¶25    The agency's notice of proposed removal included a list of documents relied upon, including a Report of Investigation (ROI) issued by agency

investigators. IAF, Tab 12 at 57, 199-257. This included memoranda documenting interviews with agency employees ND, MJ, and TR. *Id.* at 206-07, 209-11, 221-22. In his petition for review, the appellant observes that the deciding official testified that he considered statements by two of these coworkers, and argues that the deciding official's consideration of this "ex parte" information denied him due process. PFR File, Tab 1 at 12-15. The administrative judge adequately addressed this allegation when he observed that the investigative memoranda in question were contained in the ROI "and the agency expressly notified the appellant that the ROI was part of the 'Material Relied On' for its proposal . . . . Thus, the appellant's suggestion that he was unaware that the agency could be relying on these documents is contradicted by the plain language in the proposal notice." ID at 37.

*The agency did not violate the appellant's due process rights by failing to give him notice that he was being charged with intentional falsification.*

¶26        The essence of the appellant's complaint in this regard is that, by charging him with lack of candor, the agency did not put him on notice that he was being charged with intentional falsification, but both the deciding official and the administrative judge nevertheless determined that his lack of candor was intentional. PFR File, Tab 1 at 12. The proposal notice stated that a special agent who is deemed *Giglio*-impaired[10] impeaches that agent's credibility as a witness, severely hampering the agency's mission, and that his misconduct "seriously impairs the Service's and public's ability to rely on your veracity." IAF, Tab 12 at 54. This gave the appellant fair notice that all aspects of his

---

[10] Under *Giglio v. United States*, 405 U.S. 150 (1972), investigative agencies must, as early as possible in a case, turn over any potential impeachment evidence concerning the agents involved in the case to prosecutors, who then exercise their discretion regarding whether the impeachment evidence must be turned over to the defense. *Solis v. Department of Justice*, 117 M.S.P.R. 458, ¶ 4 n.1 (2012). A "*Giglio*-impaired" agent is one against whom there is potential impeachment evidence that would render the agent's testimony of marginal value in a case. *Id.*

veracity and credibility were at issue, including whether his lack of candor had been intentional.

¶27     As discussed above, a lack of candor charge "necessarily involves a degree of deception," and may involve lying under oath as well as a failure to reply fully and truthfully. *Ludlum*, 278 F.3d at 1284-85. Although a charge of lack of candor does not necessarily require proof of the specific intent required for a falsification charge, it does necessarily entail an allegation that the misconduct at issue was deceptive, which by its very nature is intentional.[11] Thus, the agency was not required to notify the appellant that it intended to "aggravate" the penalty on the basis that his lack of candor was intentional.

> *The deciding official did not deny the appellant due process of law by determining that he was Giglio-impaired.*

¶28     The agency's proposal notice specifically indicated that the proposing official believed the appellant's misconduct would render him *Giglio*-impaired. IAF, Tab 12 at 54. The appellant did not address this issue in his response to the proposed removal. *Id.* at 42-45. In issuing his decision to remove the appellant from employment, the deciding official concluded that the appellant was *Giglio*-impaired. *Id.* at 38. On review, the appellant argues that it was improper for the deciding official to make this determination based on his own experience, instead of a determination being made by the United States Attorneys' Office, and that this somehow denied him due process of law. PFR File, Tab 1 at 15-16.

¶29     A determination by a deciding official that an employee is *Giglio*-impaired, without notifying the employee in the proposal notice that this would be

---

[11] In *Payton v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-14-0055-I-1, Final Order (Jan. 29, 2015), the Board determined in a nonprecedential decision that because neither of the sustained charges—which included a charge of lack of candor—required proof of intent, the deciding official erred in considering the intentional nature of the appellant's misconduct without advanced notice. We decline to follow *Payton* to the extent that it holds that a deciding official violates due process by considering, without notice, the inherently deceptive nature of the conduct underlying any lack of candor charge.

considered, would present significant due process problems. *See Bennett*, [119 M.S.P.R. 685](#), ¶¶ 9-11; *Solis*, [117 M.S.P.R. 458](#), ¶¶ 9-10. Here, the agency did give the appellant notice and an opportunity to respond to this issue; he simply failed to avail himself of that opportunity.

<u>The appellant has failed to establish harmful procedural error.</u>

¶30    The Board may not sustain an agency decision if it results from harmful error in the application of the agency's procedures. [5 U.S.C. § 7701](#)(c)(2)(A). Harmful error cannot be presumed; an agency error is harmful only where the record shows that the procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Stephen v. Department of the Air Force*, [47 M.S.P.R. 672](#), 681, 685 (1991). The appellant makes two allegations of harmful procedural error.

¶31    The appellant asserts that agency procedures require that proposing officials consider employees' written responses and that the proposing official committed harmful error by failing to consider his written response. PFR File, Tab 1 at 17-19. The rule he says was violated is IRM 6.752.2.23. PFR File, Tab 1 at 17. As the administrative judge properly observed, however, the rule in question relates to the duties of an oral reply officer. IAF, Tab 40 at 78; ID at 32. This rule has no application to this case because the appellant never requested an oral reply.

¶32    The appellant asserts that the agency violated agency rules by twice denying his request for the presence of counsel regarding his questioning on April 30, 2010. PFR File, Tab 1 at 19-22. He cites section 210.6.2 of the TIGTA Operations Manual as being the source of his right to the presence of counsel. PFR File, Tab 1 at 21. The first sentence of the section 210.6.2 reads as follows: "The presence of counsel in non-criminal or non-prosecution type interviews is a privilege and not a right." IAF, Tab 41 at 37. The administrative judge correctly observed that the appellant had not identified any authority to support a finding

that he was entitled to have an attorney present at the interview. ID at 29. Here, the record reflects that the questioning was non-criminal and non-prosecutorial.

The appellant has not established a basis for suppressing his statements to investigators on April 30, 2010.

¶33 The appellant argues that nothing he said during the April 30 interview could be used against him because it was a custodial interview conducted without protection of his Fifth Amendment privilege against self-incrimination. PFR File, Tab 1 at 23-25.

¶34 The Employee Interview form that the appellant signed on April 30 informed him that, "[a]s an employee, you must answer the questions asked during this interview and under oath when required; failure to answer may subject you to dismissal from Federal employment or other disciplinary or adverse action." IAF, Tab 12 at 219. It further advised him that "[f]urnishing false information may result in criminal prosecution." *Id.* That the appellant was required to answer questions, however, does not, however, mean he was subject to a custodial interrogation. *See Connett v. Department of the Navy*, 31 M.S.P.R. 322, 327 (1986) (although the possibility of criminal action existed when the agency required the appellant to complete a financial disclosure form, the agency was not required to give *Miranda* notice because the appellant was not in custodial interrogation), *aff'd*, 824 F.2d 978 (Fed. Cir. 1987) (Table). If the appellant had refused to answer questions on the ground that his answers might incriminate him and the agency had disciplined him for that refusal, we would be addressing different legal issues. But since he chose to answer, he was obligated to answer truthfully and with candor. As the administrative judge correctly observed, having decided to answer questions, the appellant did not have a right to lie. ID at 31 (citing *Lachance v. Erickson*, 522 U.S. 262, 268 (1998)).

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with

the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.